Brian Best

P.O. Box 10827, S. Lake Tahoe, CA, 96158

(530) 318-3158

brianbest@zoho.com

Pro Se Plaintiff

**FILED**

APR 25 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Brian Best | ) |
| Plaintiff, | ) Case Number: **CV 19-2252** LB |
| vs. | ) |
| | ) Complaint |
| John Doe (Sheriffs Deputy) | ) |
| The Sonoma County Sheriffs Department | ) |
| Defendants | ) |

**PARTIES**

1. Plaintiff

Name:       Brian Best
Address:    P.O. Box 10827, S. Lake Tahoe, CA, 96158
Telephone:  (530) 318-3158

2. Defendants

Defendant 1:

Name: A "John Doe", a Sonoma County Sheriff Deputy

Defendant 2:

Name:       The Sonoma County Sheriffs Department
Address:    2796 Ventura Ave, Santa Rosa, CA 95403
Telephone:  (707) 565-2511

## JURISDICTION

3. My case belongs in federal court under federal question jurisdiction because it involves a federal law or right.

The federal laws and rights involved are:

(1) Aggravated Assault and Battery
(2) Excessive Force
(3) 4th Amendment ight to be free from unreasonable use of force
(4) Misconduct, Embezzling Tax Money, Breach of Contract to the Public for Services
(5) 14th Amendment right to "equal protection of the laws"
(6) Torture

## VENUE

4. Venue is appropriate in this Court because the incident happened in this district, the defendants are located in this district, and I am suing a government agency of the county.

## INTRADISTRICT ASSIGNMENT

5. Because this lawsuit arose in Sonoma County, it should be assigned to the San Francisco / Oakland Division of this Court.

## STATEMENT OF FACTS

I had been driving for approximately four and a half hours. I was moving from South Lake Tahoe, to Sonoma County. I was on my way to Sugar Loaf Campground. I needed to use a restroom, but was waiting until I saw some kind of store off the freeway. My GPS unit that my parents had loaned me stopped working. I decided to exit the freeway and find a place to park. I was headed North of US 101. I exited the freeway onto Santa Rosa Ave. I came immediately to the intersection of Roberts Lake Road, and saw no buildings around. I made a right hand turn onto Roberts Lake Road. I drove for about a mile with the freeway on my right, and a fence on the side of the road to my left, with no buildings around. I came to a shopping plaza, with a Mary's Pizza Shack, a shopping plaza, and what looked like a time share or apartment complex. It was approximately 10:15 to 10:20 PM. Everything looked closed.

Part of the parking lot was blocked off by a fence. I parked in a corner, and walked around the building, and peed in a bush behind a tree, in the dark, in a forested and well-covered area.

There was a building under construction nearby. There was a lake within approximately 30 to 50 feet. The moon was out, and I decided to take a break from driving and walk around a bit. I went and looked at the building under construction. It was a restaurant (I found out later it was "Bear Republic Brewing Co."), and had a big open kitchen area open to view from the dining area, and I found it aesthetically and architecturally interesting. There were no signs, and the area was not blocked off by a fence or anything.

I left the area, (1) without taking anything or damaging anything, and (2) was walking back in the directions towards my car. The arresting officer should confirm those two facts.

The construction area had had a big light inside, and a surveillance camera, and 2 Rohnert Park Police officers were hiding behind a bush, and when I walked forward, they came out from behind the bush, pointed weapons at me, and told me to get on the ground. I was absolutely cooperative, and the arresting officer confirmed this later. I was handcuffed. The arresting

officer asked me what I was doing, and when I told him, he said, "I was not born yesterday", and stated he did not believe me. I was escorted into the back of the police car. He had said he was charging me with burglary. He left.

There were other officers there, and I asked to speak to them, and explained, and they said I would have to talk to the arresting officer. When the arresting officer came back, and was willing to hear me out, he said "I have already filled out the paperwork", and "I would get in trouble if I changed it now."

I was charged with felony burglary, and taken to the jail in Santa Rosa, and booked in.

The Santa Rosa Jail has a "waiting area" for inmates - a big open area with a TV, approximately 6-7 rows of chairs with an aisle down the middle, with approximately 5 chairs on each side of the aisle per row. There was an open drinking fountain nearby. I was sitting in the waiting area, and I was called on the loud speaker to the intake desks, and I was asked intake questions.

In response to the question "Are you on probation?", I responded, verbatim, "I would prefer not to answer that without an attorney present."

The deputy responded, verbatim, "Fine. I'm done. Go back to the waiting area."

I looked up, said "Okay", got up, and started walking back to the waiting area.

When I was halfway to the waiting area, the deputy shouted out, "Actually you know what, go to the holding cell." (I can't remember if she said "Actually you know what, go to the holding cell", or "Actually you know what, I change my mind, go to the holding cell.")

I stopped. I turned calmly, saw that the deputy had gotten up and walked around the intake desk, and saw that the deputy at the desk to her left had also gotten up and was following her.

I did not move any part of my body. They did not stop walking towards me or hesitate. The first deputy, who had asked the intake questions, and who had interacted with me previously as described, hugged the wall to her right. I did not say anything.

The first deputy walked around me. I did not move at all. I had turned when she had shouted out to me that I was to go to the holding cell.

The first deputy grabbed my right arm from behind me suddenly, with both her hands, and started to pull my arm, in a way in which could have eventually broken my arm or dislocated my shoulder.

I want to be up front about the fact that I am subject to the universal laws of physics, and do have physiological reflexes. I did retract and untwist my arm on reflex after she walked behind me, and grabbed my arm suddenly from behind, and yanked and twisted my arm. But I did not extend any part of my body towards any of the deputies at any time. The holding cell was in front of me and slightly to my left. The deputy had walked around the side of me opposite the holding cell, and had grabbed my arm while she was on the side of me opposite of the holding cell.

After an estimated 0.3 to 0.8 seconds, I mentally processed what was happening, and totally relaxed. I said "Okay," and for a moment, the deputy stood there holding my right arm, and I was just standing there with her holding my right arm, and I had my left arm relaxed at my side. I had turned slightly to my right by about 30 degrees from my orientation prior to this interaction.

The second deputy had walked up behind me, and he put his right arm around my neck, his left hand on the back of my head, and leaned me backward, while the first deputy held my right arm. This is what an Internal Affairs officer later called a "Carotid Hold" in law enforcement terminology, but is also called a "Rear Naked Choke" in martial arts. The second officer forced me into unconsciousness. And the last thing I remember was being leaned backward, and having the thought that the best thing to do to resolve the situation would be to relax and demonstrate that I am not a threat. I believe I tried to "tap out" by tapping my left thigh with my left hand.

When I regained consciousness, I was on the ground, on my stomach, face down. The second officer still had his right arm around my neck. His right knee was on my back right on top of my left kidney area on my back, and he had I would estimate 80-90% of his weight on that knee.

My head was turned to the left.

The first officer still had my right arm grasped with both hands.

I could not breathe.

The first thing I remember is yelling "Ahh" during a moment when I could barely breathe, and being instinctively afraid for my life. I saw that the second officer had shifted his left hand from the back of my head to against his right fist. He was actively crushing my neck between his right arm with great force and effort.

This happened right underneath a surveillance camera, which I brought up afterwards, but I was told continuously that the surveillance system does not record.

Several other deputies had come out. The "second deputy" (the "John Doe" defendant) then said "Give me your arm."

My left arm was pinned under the second deputy's left leg, under his shin, adjacent to his ankle. He repeated his statement to give him my arm. I could not breathe or speak at that point because of the choke hold.

One of the other deputies had come over, to the side the second deputy was on -- my left, and pointed at my arm and said "I think his arm is under..." and pointed at my arm underneath the second deputy's leg.

I believe this lasted 4 to 6 minutes, from the time I regained consciousness, until the second deputy stopped crushing my neck, and stopped crushing my kidney with his knee with most of his weight behind it. I was handcuffed, picked up, and carried into the holding cell, and placed on my knees on the bench in the cell face against the wall, all the way against the wall.

Another deputy had a tazer out, and was pointing it at me. The other deputies left the cell except her, and she said "If you move, you will be tazered, do you understand?" And I said calmly "Yes. I don't want any problems." And she left the cell and locked the door.

I sustained significant injury to my kidney, and a muscle in my neck was sprained. My wrist was hurt but not significantly injured.

The deputy who had assaulted me was grinning hugely continuously until he and the first deputy both left about 15 minutes later. He showed two other officers something on the computer and laughed, and seemed absolutely delighted.

I asked another deputy to identify the deputy who had assaulted me and the deputy refused to do so.

I had asked for paper and pen and was given them. I wrote the exact events that happened on the piece of paper and gave them to the deputy. I had slipped the paper under the door. The deputy stood there for approximately 30 seconds and read what I had written on the paper -- which was just a description of the events. He then refused to take the paper and left it on the floor, and it was picked up by an inmate janitor later and thrown in the garbage can that he had with him.

I bailed out.

The D.A. decided not to file charges.

I called the Sheriffs office within the next day or two, and requested, "I would like to make an official complaint in writing." The phone attendant transferred me. I repeated my request, to make an "official complaint," "in writing", and the officer replied "We don't do that. Why don't you tell me what happened?" So I did. He ended the conversation. No record was made by the Sheriffs Department of this call.

The incident happened right underneath a surveillance camera, but apparently the surveillance system in the jail does not record.

Much has happened since then interacting with various people who were representing the government, and I am continuing to interact with government agencies and officials.

I sent the County Supervisors Office, and the Sheriffs, a complaint, and it had a drawing of the orientation of my body after I was on the ground face down on my stomach, showing that the female officer was on the side of me opposite of the holding cell, and showing the path she took around me, opposite the holding cell.

## CLAIMS

The Cruel and Unusual Punishments Clause of the Eighth Amendment

The Fourth Amendment Prohibiting Unreasonable or Excessive Use of Force

42 U.S.Code § 1983 Civil Rights

18 U.S.Code § 2340A, Torture

California Penal Code § 149, Unlawful Beating by a Public Officer

California Penal Code § 206, Torture

California Penal Code § 243(d), Aggravated Battery

The first question to ask is if punishing me for saying "I'd prefer not to answer that question without an attorney present" by sending me to a holding cell instead of the waiting area with the TV and open area was arbitrary. Obviously in the situation I described, it was meant as punishment. The answer to whether it was arbitrary is yes because I do indisputably have the right to consult an attorney before answering that specific question. Even if I didn't, my intention was only to state my preference - my intention was not to outright refuse, and this was reflected in the technical meaning of the words I used.

Secondly, the first police officer, who walked behind me, and then unexpectedly grabbed and yanked my right arm by my wrist. I should have been given reasonable chance to follow her

1    directions before she used physical force, which I was not.  If I had been given a chance to
     follow her directions I would have done so on my own.

2
     Thirdly, the second officer, who intentionally and maliciously and continuously inflicted serious
3    pain and injury to me does not have the right to do so; his actions do not fulfill any exceptions to
     the law against assault and battery.  Even if I was mistakenly perceived (or more likely, lied
4    about) as being non compliant, physically resistant, or even combative, once I had been forced
     into unconsciousness, put on the ground, face down, with my right arm restrained by the first
5    officer, and my left arm pinned under his left leg, even if he somehow negligently and
     obliviously did not realize my left arm was pinned under his leg while he was assaulting me
6    (which I would believe to be a lie), there was no reason to continue to inflict pain and injury and
     risk my death by violently crushing my neck for a long period of time, as well as pain and injury
7    (and risk of serious injury) to my kidney by driving his knee into it.  Even after another officer
     notified him that my left arm was pinned under his leg, he continued to inflict pain and injury on
8    me by squeezing my neck with his forearm hard enough to sprain my neck, and put a large
     percentage of his weight on his knee on top of my left kidney.

9
     There is no possible way a person could "accidentally" drive their knee into a person's kidney
10   area on their back "just by coincidence".  It is completely unreasonable to consider that the truth
     of what happened.  It was without any doubt whatsoever intentional and with the intention to
11   cause pain and injury.  Strangling someone and squeezing their neck hard enough to sprain their
     neck for such a long period of time is even more obviously intentional, grievous, and
12   unnecessary.

13   The continual intention of the second officer to inflict pain and injury on me went beyond the
     intention of restraint, and continued after I was restrained, and this constitutes assault as well as
14   aggravated battery.  In fact I was never not restrained, since I was readily and immediately
     compliant, within the limits of the universal laws of physics, and physiology, with every
15   command and instruction.

16   Also, I had told the first officer "okay" and was not moving, when the second officer put his right
     arm around my neck and then forced me into unconsciousness.  I also never extended any part of
17   my body towards any of the deputies at any point in time.

18   It is also negligent, and suspicious, for the Sheriffs Department to install a surveillance system in
     the jail, and choose to not record the video, or choose to not install recording capability.

19
     The force used for the length of time it was used for was easily potentially lethal force.  The
20   "Carotid Hold", or "Rear Naked Choke" has killed people in "30 to 40 seconds" (Stephen A.
     Arceneaux III of Destrehan, Louisiana).  I do not know how long the hold was applied to me for,
21   before I regained consciousness, at which point, the officer had shifted his left hand from the
     back of my head to against his right fist and continued to crush my neck with intense effort for
22   another 4 to 6 minutes.

23   I should not have to have crushed vertebrae, a crushed windpipe, or ruptured kidney before I am
     entitled to "the equal protection of the laws" (as guaranteed by the U.S. Constitution, 14th
24   amendment).  Also just because I happened to not suffer those injuries does not mean there was
     not serious and significant risk of them happening.

25   When the first officer randomly grabbed my right arm from behind and yanked my arm, I would
     estimate that 85% of any so-called "resistance" that was encountered was due to universal laws
26   of physics, and would have been equal to that encountered when yanking an inanimate object.
     People can not be punished either for being subject to universal laws of physics, or for the
27   simplest and most basic form of physiological reflexes.  Again, I never extended any part of my
     body towards any of the deputies.  All I did was slightly retract and untwist my arm, because
28   what she was doing could have (eventually) dislocated my shoulder, or broken my arm.  I'm not

1    saying she was yanking hard enough to do so. I'm just trying to explain the physiological reflex,
     and the way that she was yanking / twisting my arm. But likewise, I moved very little. These
2    can not reasonably be named "resistance" in the legal sense of the word, or be considered
     mutually exclusive to complete compliance. In this situation, I should be considered to have
3    been completely compliant, because I was. Again, I quickly processed mentally the situation,
     and totally relaxed, and said "Okay", before the second officer put me in a "carotid hold". After
4    he put me in the carotid hold, I did not resist or anything. I was completely relaxed and did not
     move at all.

5    I have broken my arm and had 2 concussions skiing, and my ankle once playing soccer and once
     snowboarding. The pain in my kidney was much worse and the pain lasted much much longer
6    than any of these accidents. It was about as disabling afterwards as the broken ankle and more
     disabling than the broken arm.
7
     The fact that the John Doe assaulted me in ways which were blatantly not conspicuous, but also
8    blatantly very painful should be considered worse, not better -- meaning, it should be evidence of
     malicious intention.
9
     From what I've read of kidney trauma, just because no trace of blood was found in my urine, it
10   still could have been up to level three kidney trauma. I did fully recover after approximately 4-5
     weeks.
11
         REFERENCES:
12
     The National Institute of Justice, the Research, Development, and Evaluation Agency of the U.S.
13   Department of Justice. "The International Association of Chiefs of Police has described use of
     force as the 'amount of effort required by police to compel compliance by an unwilling subject.'"
14
     Id. "Law enforcement officers should use only the amount of force necessary to mitigate an
15   incident, make an arrest, or protect themselves or others from harm."

16   Id. "An officer's goal is to regain control as soon as possible while protecting the community.
     Use of force is an officer's last option — a necessary course of action to restore safety in a
17   community when other practices are ineffective."

18   Madrid v. Gomez, 889 F. Supp. 1146 (N.D. Cal 1995), 102. "[T]here is simply no place for
     abuse and mistreatment, even in the darkest of jailhouse cells."
19
     Madrid v. Gomez, infra, 889 F. Supp. 1146, 48. "The court finds that supervision of the use of
20   non-lethal force at Pelican Bay is strikingly deficient") and Id at 53 ("It is clear to the Court that
     while the IAD goes through the necessary motions, it is invariably a counterfeit investigation
21   pursued with one outcome in mind: to avoid finding officer misconduct as often as possible. As
     described below, not only are all presumptions in favor of the officer, but evidence is routinely
22   strained, twisted or ignored to reach the desired result." -

23   Turner v. Safley (1987) 482 U.S. 78, 89 [upholding restrictions on mail between inmates at
     different institutions but striking down a restriction on inmates getting married while in prison]
24   ("when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it
     is reasonably related to legitimate penological interests") In making such a determination, the
25   court can look to whether a logical connection exists between the policy and goal; whether the
     objective is legitimate and neutral; whether other means exist to accomplish the goal; the "impact
26   accommodation of the asserted constitutional right will have on guards and other inmates, and on
     the allocation of prison resources generally;" and whether the policy seems to be an
27   "exaggerated" response to the problem.

28

     Complaint                              Case Number:
     Page 7 of 9

Scher v. Engelke (8th Cir. 1991) 943 F.2d 921 ("This is a clear case of a prisoner who was subjected to retaliatory cell searches and conduct violations for bringing the illicit conduct of a prison guard to the attention of prison officials.  The lawmaking retaliation for the exercise of a constitutional right actionable under 1983 has been established for some time and an objectively reasonable official could not fail to know of it.")

Hudson v. McMillan (1991) 503 U.S. 1, 7 ("In recognition of these similarities, we hold that, whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.")  Referring to Whitley v. Albers (1986) 475 U.S. 312.

Madrid v. Gomez, infra, 889 F. Supp. 1146, 25.  In the case of Inmate Castillo, who was beaten unconscious for refusing to return his tray, the judge came to the "inescapable conclusion that Castillo was subjected to the use of excessive force that was imposed, not in a good faith effort to restore order or maintain prison security, but maliciously for the purpose of causing pain and inflicting punishment." -

Id at 30.  In the case of Inmate Dortch, who was scalded with hot water: "It is nonetheless clear, from all of the surrounding circumstances, that Dortch was given the bath primarily as a punitive measure and for the purpose of inflicting some degree of pain, in retaliation for, and perhaps out of frustration with, his prior offensive conduct."

Tennessee v. Garner, 471 U. S. 1. "Constitutional right to be free from excessive force during a seizure"

U.S. Constitution, Amendment 14.  "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Graham v. Conner, 490 U.S. (1989)

Id at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8–9 (1985)).  The 'Graham test' considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and  whether he is actively resisting arrest or attempting to evade arrest by flight."

People v. Pre (2004) 117 Cal. App.4th 413, 419. ("Section 206 does not require permanent, disabling, or disfiguring injuries; 'Section 206 only requires 'great bodily injury as defined in Section 12022.7'.... 'Abrasions, lacerations and bruising can constitute great bodily injury.'")

Id at 420.  "[S]everity of a victim's wounds is not necessarily determinative of intent to torture" since "[s]evere wounds may be inflicted as a result of an explosion of violence [citations] or an 'act of animal fury' " rather than an intent to inflict pain for revenge, extortion, persuasion, or other sadistic purpose."

People v. Healy (1993) 14 Cal. App. 4th 1137, 1139. ("We also hold that acts of torture, committed for sadistic purposes do not require a finding of sexual abuse.")

Id., at 1142. "Sadism has been defined as "[a] form of satisfaction, commonly sexual, derived from inflicting harm on another." (Black's Law Dict. (5th ed. 1979) p. 1198.) Thus, although sadistic pleasure is commonly sexual, a sexual element is not required."

## DAMAGES AND DEMAND FOR RELIEF

I sustained a serious injury to my kidneys.  Although my kidneys were not ruptured, that does not mean much.  I had pain in both kidneys which was excruciating for 8 hours after the incident. The pain was so bad that I could not walk upright or at a normal pace for a week.  And the pain lasted for a month.

A muscle in my neck was sprained, and my neck was in pain for about 6 days.  My wrist was hurt also.

By far the biggest damage was psychological.  I have intense fear of going outside.  I have intense anxiety being around people.  For example, I am so afraid of seeing my neighbors that I don't go outside to water my garden, even though my neighbors are really nice.  I have constant thoughts when I am outside of hypothetically being harassed by law enforcement.  I have unshakable fear of all human beings.

I am asking for 3 million dollars.  This is not a safe society to live in.  I was very clear with the County that my priorities were not monetary reimbursement but that the incident be addressed, and to resolve the incident in a reasonable manner.  They refused, and displayed a culture of dishonesty and irresponsibility at the upper levels of management (although the general workers were respectful and honest).  I would rather live in a society where I am not vulnerable to being almost killed or possibly killed by people who think they are above the law.  No amount of money can repair the damage.  The monetary reimbursement is not even a priority, but it the only option in this venue.  I am asking for enough to start to approach to be able to maybe live a more safe life.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues:  Yes please.

Respectfully submitted,

Date: 4/23/2019            Sign Name:  BmBest

Print Name:  Brian Best

JS-CAND 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Brian Best

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

Sonoma

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

"John Doe", and The Sonoma County Sheriff's Dept.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*  Sonoma

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## CV 19-2252     LB

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☒ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 710 Fair Labor Standards Act | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 430 Banks and Banking |
| | 340 Marine | | | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 151 Medicare Act | 345 Marine Product Liability | **PERSONAL PROPERTY** | 740 Railway Labor Act | 840 Trademark | 460 Deportation |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 350 Motor Vehicle | 370 Other Fraud | 751 Family and Medical Leave Act | **SOCIAL SECURITY** | 470 Racketeer Influenced & Corrupt Organizations |
| | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 790 Other Labor Litigation | 861 HIA (1395ff) | 480 Consumer Credit |
| 153 Recovery of Overpayment of Veteran's Benefits | 360 Other Personal Injury | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | 862 Black Lung (923) | 490 Cable/Sat TV |
| 160 Stockholders' Suits | 362 Personal Injury -Medical Malpractice | 385 Property Damage Product Liability | **IMMIGRATION** | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 190 Other Contract | | | 462 Naturalization Application | 864 SSID Title XVI | 890 Other Statutory Actions |
| 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 465 Other Immigration Actions | 865 RSI (405(g)) | 891 Agricultural Acts |
| 196 Franchise | 440 Other Civil Rights | **HABEAS CORPUS** | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| **REAL PROPERTY** | 441 Voting | 463 Alien Detainee | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 210 Land Condemnation | 442 Employment | 510 Motions to Vacate Sentence | | 871 IRS–Third Party 26 USC § 7609 | 896 Arbitration |
| 220 Foreclosure | 443 Housing/ Accommodations | 530 General | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | | 950 Constitutionality of State Statutes |
| 240 Torts to Land | 446 Amer. w/Disabilities–Other | **OTHER** | | | |
| 245 Tort Product Liability | 448 Education | 540 Mandamus & Other | | | |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation–Transfer |
| | | | | | ☐ 8 Multidistrict Litigation–Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*

42. U.S. Code § 1983, 18. U.S. Code § 2340A, etc.

Brief description of cause:

Unreasonable and Excessive Force, Torture, Aggravated Battery, Negligence, Misconduct.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.

DEMAND $ 3,000,000

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*

JUDGE _____  DOCKET NUMBER _____

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

*(Place an "X" in One Box Only)*   ☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE   ☐ EUREKA-MCKINLEYVILLE

DATE 4/23/2019   SIGNATURE OF ATTORNEY OF RECORD