BRIAN BEST

Plaintiff Pro Per

**UNITED STATES DISTRICT COURT**

**Northern District of California, Oakland Division**

| | |
|---|---|
| BRIAN BEST, | **Case No: 4:19-cv-02252-YGR** |
| Plaintiff, | **OBJECTIONS TO DEFENDANTS' MOTIONS IN LIMINE** |
| vs. | Judge: Honorable Yvonne Gonzalez Rogers |
| VIRGIL SMITH, SONOMA COUNTY,  et. al., | |
| Defendants. | |

### I.    General Objections

The dispute of facts come down to the following disputes of fact:

1.    Whether or not Plaintiff said "This is bullshit," "This is ridiculous", "Cops are out of control", and "Don't you touch me"; all of which Plaintiff declares under oath he did not say during the incident.

2.    Whether Deputy Fazzio grabbed Plaintiff by the wrist, and performed an aikido style technique which caused torque in Plaintiff's shoulder, and Plaintiff was twisted around unintentionally, or whether Deputy Fazzio grabbed Plaintiff by the "bicep" in a "firm grip", and then Plaintiff deliberately turned.

3.    The severity of the neck restraint; Plaintiff states, under oath, that Defendant Smith performed the carotid hold from behind Plaintiff successfully, and that Plaintiff lost consciousness while standing, and that he regained consciousness on the ground, with his stomach in contact with the ground, and that Defendant Smith modified the hold and continued to apply a choke-hold to Plaintiff for another approximately 4-6 minutes, crushing Plaintiff's

neck, and causing Plaintiff to be unable to breathe or speak for most of that time.  Defendant Smith's statement is extremely vague, and uses strange semantics to avoid specifics and mislead the reader.  Defendant Smith explicitly admits to putting his arm over Plaintiff's right shoulder, "shooting [his] arm across" (Plaintiff's neck), and "went to apply pressure" (on Plaintiff's carotid arteries"), "attempting" to apply the carotid hold.  His statement that he "abandoned" the carotid hold is unclear.  He does not deny modifying the hold, and continuing to apply a chokehold on Plaintiff.  But his version sounds generally less severe than Plaintiff's.

4.      How long the event lasted.  Defendant Smith states the event, apparently in its entirety, including Deputy Fazzio grabbing Plaintiff by the arm, Plaintiff turning to the right, Deputy Smith putting his right arm over Plaintiff's shoulder, the application of the carotid hold, "driving [Plaintiff] to the ground", Deputy Fazzio radioing other deputies to notify them that they had Plaintiff on the ground, the other deputies who were on some type of drill coming from where they were, and arriving, and putting handcuffs on Plaintiff, lasted less than a minute. Plaintiff estimated the amount of time from regaining consciousness, until he was handcuffed at 4-6 minutes.  This was not inclusive of events prior to losing consciousness (grabbing of the arm).  Plaintiff gave an estimate/guess of the amount of time he was unconscious for, based on the events that had elapsed while Plaintiff was unconscious, and how Plaintiff felt when he regained consciousness, at 30-40 (or 25 to 45) seconds.

-

Despite the fact that the event occurred right under a camera that was capable of recording, and the fact that the Sheriff's Office, and Sonoma County Legal Counsel, have been caught lying about the camera every single time they provided a statement about the camera and its recording capability (or at least drastically inconsistent with other evidence), there appears to be no video of the incident (which someone stated for the very first time in February of 2022).

Therefore, this comes down to Plaintiff's credibility, Plaintiff's demeanor, and how Plaintiff interacts and communicates with authorities in situations where there is a disagreement; whether Plaintiff acts intelligently, properly, courteously, and deferentially.  And it comes down to the policies, customs, and practices of the Sonoma County Sheriff's Office.

Therefore, all admissible evidence pertaining to the policies, customs, and practices of the Sonoma County Sheriff's Office, and the way that Plaintiff communicates with authorities in similar situations, is relevant, under the relevance test dictated by Rule 401 of the Federal Rules of Evidence.

The settlement offers, or lack thereof, are similarly relevant to the issues in this case, as they are direct evidence of the demeanor of Defendants.

The events pertaining to the destruction and/or spoliation of direct evidence of the incident, and obstructing Plaintiff from preserving direct evidence of the incident, are also relevant to the incident.


## II.      Overly Broad:

(This was prepared in objection to Defense Counsel's original Motions in Limine; Plaintiff can't be expected to edit these, and Defense Counsel's new motions are hardly any less broad at all.)

Defense Counsel seeks not to exclude Plaintiff from referring to specific videos, or even all videos with the exception of those that are relevant, but a blanket prohibition against all videos, and all news articles.

Plaintiff has no intention of showing the jury any videos, or news articles, that aren't specifically, heavily, and crucially relevant to questions of fact in this incident.


## III.     Relevance

Federal Rule of Evidence 401 states: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

If there were video evidence, there would be no need to look anywhere else to determine the facts.

See Exhibits 1 and 2.  Exhibit 2 talks about the camera system in the jail, and its automated recording functionality, in 2019.  Exhibit 1 states under oath that the cameras do not

record continuously in 2021, and that only 1 camera can record at a time, in 2021, and a "series of tasks (steps)" must be performed to start the recording function, to record with one camera at a time.

The burden shifted to such an extent that Plaintiff must "prove" the relevance of every single exhibit Plaintiff presents (according to Defense Counsel's original MILs; Defense Counsel's updated MILs seek to exclude approximately 70% of Plaintiff's exhibits, all of which are relevant and admissible).

For example, take the iron (and chromium) deficiency anemia.  Mr. King advocates that I be limited (making no basis).  The issue he alludes to obliquely is whether or not the anemia may be relevant to the kidney injury.  Plaintiff has disclosed admissible scientific studies showing a correlation.  Furthermore, there was an acute onset with direct relation with the incident.  This is a question of fact, and Plaintiff is only required under the jury instructions to prove matters of fact to a preponderance of the evidence, therefore, a jury should be informed of the matters and should get to decide whether or not the anemia is most likely caused by the kidney injury, under the totality of circumstances and with all the evidence available to make the most informed decision possible.

In the alternative, Plaintiff should have a fair opportunity to consult and retain experts.

### IV.    Various County Employee Witnesses

If Defense Attorney Michael King doesn't want them to appear, and states that he conducted reasonable inquiries into the facts, then the jury can just take Plaintiff's word on the facts in the regard to Plaintiff's experiences.  For example, Mark Azzouni stated he knew exactly which camera Plaintiff was referring to.

Why would Defense Counsel try to prohibit Plaintiff from calling these witnesses? These witnesses are impartial to Plaintiff.

It probably isn't even necessary, and Plaintiff wasn't really expecting to call all those people at this point in time, simply because Defense Counsel has had a reasonable chance to conduct inquiry about the matters Plaintiff contended, and failed to provide any declarations to

the contrary, and will fail to present any evidence to the contrary at trial.  Plaintiff's declarations of fact have gone undisputed.

Eddie Engram is the one who signed off on the investigation of Defendant Smith.  See Exhibit 6.

The facts that (a) Mr. Essick responded to Plaintiff's request to "make an official complaint in writing" with "we don't do that" is intimately related to this case because it (deliberately) caused the spoliation of evidence of this case.  If it weren't for the fact that Mr. Essick did that, the witnesses would have been interviewed timely (they weren't interviewed anyway, even though Cash directly implied they were; having two layers of misconduct doesn't excuse it).

Defendants were free to conduct reasonable inquiry into the facts.  They don't dispute these facts, which are relevant, but now they try to burden Plaintiff unduly to show relevance which should be reasonably obvious.  They were free to take the deposition of Mr. Essick, or provide a declaration.  They didn't.

Is the fact that Mr. Essick obstructed Plaintiff from filing a complaint irrelevant?

There is a certain threshold where things shouldn't have to be explained.

The only reason Defendants' counsel advocates that Plaintiff should be prohibited from bringing up these matters is because it's detrimental to their case.  The matters *are* relevant, which is exactly why it is detrimental to their case.


### V.        County Funded Defense, and County Indemnification

Defendants' Counsel wouldn't have been able to cause an estimated $760,000 worth of litigation and additional damages, if it weren't for the County's choice to fund Defendants' defense.  In fact, Defendant would have been hard pressed to find a private attorney.  Defendants enjoyed the benefit of publicly funded legal counsel, but now would let the jury believe that Defendants' counsel is privately funded, hoping for undue sympathy based on false presumption?

County wants to have their cake and eat it too.  They want to argue both sides.  They want to simultaneously ratify the actions of Defendant, and then argue that Plaintiff isn't entitled to the Monell claim.

They want to misappropriate (for lack of a less controversial word) public funds to defend all their employees in civil Court, without regard to the law, and then prohibit the victims from mentioning this at trial.

Trying to argue both sides of an issue, and reap the benefits of both ratifying Defendant Smith, indemnifying Smith, and funding his civil legal defense, and then say they don't, and reap the benefits of assumption of the contrary is a violation of RPC Rule 3.1, and 3.3, and possibly 3.5 (and Rule 11).

### VII.    Victims Rights Laws

Evidence was destroyed and spoliated.  plaintiff cited the victims' rights laws to the DA's Office (Richard Celli) and to the Attorney General's Office (Lupe, Casey Hallinan, etc), and they openly and knowingly violated the victims' rights laws, and that is relevant to this case, because it resulted in the spoliation of evidence in this case.

### VIII.   The Eighth Amendment Claims

The Case Laws pertaining Eighth Amendment are relevant, because the eighth amendment claims were merged with the fourth amendment claim, because they are claims for the same act (see: "Merger Doctrine").

### IX.     Other cases or incidents

1.     David Ward:

Both Defense Counselor Abelson and the Court already acknowledged that the David Ward incident was relevant.

I'd like to point out that Plaintiff's Motion for Summary Judgment (Dkt 43) was filed on the Docket precisely 20 days before (11/07/19) David Ward was murdered (11/27/19) by Charles

Blount, another Sonoma County Sheriff's Deputy, using the same technique that Defendant Smith admitted to applying to Plaintiff.  Plaintiff stated: "Plaintiff pleads with the Court that the issues described in Plaintiff's complaint are extremely important and foundational civil rights issues which were flagrantly violated and warrant being addressed firmly - the right to general and reasonable safety."  The document warrants being re-read (Exhibit 3).

Also, Defense Counselor Abelson acknowledged that the incident was relevant in court filings.  And so did the Court.

2.      The Esa Wroth case happened in 2013, and occurred not 5 feet away from where Plaintiff was tortured.  And it was filmed.

It is THE most comparable incident to this incident.

3.      The Jason Anglero Wyrick is relevant to rebut statements made already by Internal Affairs Investigator Andrew Cash regarding the "fight or flight response" and his theories about that.

4.      The yard counseling case, and its heavy relevance speaks for itself.  Many of the precisely same techniques were done to those victims that were done to Plaintiff.  If Defendants dispute the facts, then it would mean that they are alleging that Plaintiff is incorrect about the facts.  The jury should have the chance to determine what the chances are the same techniques used in the yard counseling case, on video, were precisely the same techniques that were used on Plaintiff.

Furthermore, the fact that the County had an official policy, until 2018, of allowing their employees to torture people for any reason, no matter how arbitrary, is irrefutably relevant to the facts of this case.  (See Exhibits 4, and 5, showing the yard counseling policy, a court filing from the yard counseling case).  The fact that such a policy was not technically directly applicable, since the incident was not technically a case of "yard counseling" according to that official written policy does not mean that such an official, publicly available policy endorsing torture is not relevant to this case.

5.      Other Cases:

The fact that there is a large quantity of related cases has nothing to do with whether or

1   not they are in fact relevant, and is not Plaintiff's fault.

2   　　　　Other related cases and incidents include the <u>Celeste Moon</u> case (where the carotid hold

3   was used, and lied about, without any discipline from the Court, the DA's Office, or the Sheriff's

4   Office, directly resulting in the death of David Ward, and the contributing to the harm to

5   Plaintiff), the 2020 Marqus Martinez case (where a previous litigant for torture was retaliated

6   against without apparent consequences), and the Branch Wroth case (for a number of reasons,

7   since it was the same department that arrested Plaintiff, in the same County, and happened

8   within 1 month, and was likely retaliation by a preponderance).

9   　　　　The Gabbi Lemos case is only relevant to the fact that Plaintiff did not have a reasonable

10  chance to file the local government tort claim within 6 months.

11  　　　　The reasoning stated here is relevant because, without video evidence (despite the fact

12  that the incident occurred under a camera that was capable of recording, and may or may not

13  have been recording) the customs and practices of the Sheriff's Office, and the overseeing

14  agencies (such as the county DA's Office, and Attorney General's Office) fall under Rule 401, as

15  cited above.

16

17  　　　　　　**X.　　Exhibits:**

18  1.　　　　Brian Williams' Statement about the Cameras

19  2.　　　　News Article of Missing Video in 2019 of Apparent Suicide by Bologna Sandwich

20  3.　　　　Motion for Summary Judgment

21  4.　　　　Yard Counseling Policy

22  5.　　　　Marqus Martinez et. al. v. Sonoma County, 2015

23

24  　　　　Respectfully Submitted,

25

26  Dated:  2/18/22　　　　　　　　　　　By:/s/Brian Best_____

27  　　　　　　　　　　　　　　　　　　BRIAN BEST
　　　　　　　　　　　　　　　　　　　PLAINTIFF PRO PER

28