BRIAN BEST

PLAINTIFF

# UNITED STATES DISTRICT COURT

## Northern District of California, Oakland Division

| | |
|---|---|
| BRIAN BEST, | Case No: 4:19-cv-02252-YGR |
| Plaintiff, | **APPLICATION FOR MISTRIAL (CHAMBERS COPY)** |
| vs. | |
| VIRGIL SMITH, SONOMA COUNTY, | **THE HONORABLE YVONNE GONZALEZ ROGERS** |
| | Hearing: Tuesday, April 25th, 2022 |
| Defendants. | |

**I.     General Violations of Due Process:**

1. Defense Counsel's Recalcitrant Disregard for His Obligations During Discovery, Lack of Court Aid, Undue Hardship, and Double Standards for Parties during Discovery

2. Misconduct During Trial

3. Widespread deliberate arbitrary bias by government

4. Double Standards

5. Unwillingness to consider Plaintiff's motions, causing multiple years of delay (and corresponding allowance for deliberate spoliation of evidence) with constant frivolous litigation from Defendants (as established several times in prior motions) without discipline.

**II.     Improper Dismissal of 14th Amendment Claims, Continued Obstruction of Amending:**

1. The Court stated, "The time to amend your complaint has come and gone", during Discovery, at a hearing for Plaintiff's motion for sanctions due to Defense Counsel's unlawful spoliation, alteration, and withholding of relevant evidence *after* Defendants stipulated to an

extension due to knowing full well they were in violation of the rules governing Discovery. Rule 56 states that Plaintiff may amend the complaint even after trial, and Plaintiff has been trying to amend the complaint but has been forced to focus on more important factors.

     2.     Deceiving the Court regarding Plaintiff's 14th amendment claim.

     3.     Defendants' Baseless Motion for Summary Judgment, where the burden of proof was improperly shifted onto Plaintiff, and Plaintiff had to respond twice, in addition to the other 4-5 times to the same issue brought in Defendants' baseless and/or improper Motions to Dismiss; obstructing Plaintiff from meritorious amendment of the complaint (which shouldn't have required amendment).

     4.     The Court stated, "I don't think being soft spoken or youth would be covered" (may be not quite verbatim) under the equal protection clause.

     5.     Arbitrary discrimination based on Plaintiff being male was disregarded twice.

     6.     The actual law on the matter (See Willowbrook v. Olech, Novarro v. Block, Watson v. Kansas City).

     7.     The fact that the oblique and frivolous ratification of his superiors and the overly broad scope of grossly deficient policy (combing pain compliance – torture – techniques with "control techniques") allowing (in practice by consistent and clear ratification) irrefutably unreasonable use of force was the biggest part of their defense – Defendants were allowed to condone Defendant Smith's actions as within policy, but the fact that they also condoned a literally veritable torture ring in the same facility, and the fact that those deficiencies in policies weren't addressed until 2018, and the destruction of video evidence, was precluded.

     8.     Unnecessary stay ostensibly (the purpose explicitly stated was:) because the litigant can't be expected to litigate because they're pro se.

**III.**     **Violation of Village of Willowbrook v Olech** (14th Amendment Equal Protection / Fair Treatment by Government) by SF Bar's "Federal Pro Bono Project" Help Service (Federally Funded, Government Sponsored Monopoly)

**IV.    Defense Counsel relied on claims that Defendant Smith acted according to policy as a defense**, but the state-wide standards referred to by both experts were disregarded by the jury due to lies stated by Defense Counsel and allowed by the Court, when policy is not the standard, and the fact that the Sheriff's Office had a veritable torture ring, which was explicitly ratified by the municipality after review to be in accordance with policy, and those policies, customs, and prac

VERITABLE TORTURE RING, WHICH WAS EXPLICITLY RATIFIED AFTER REVIEW, "IN ACCORDANCE WITH POLICY", AND THOSE POLICIES, CUSTOMS, AND PRACTICES, WERE NOT ADDRESSED UNTIL 2018, was precluded from the trial.

Plaintiff even acknowledged, when Dr. Rylant was testifying and offered to talk about the improper policies of Sonoma County, that the policies were not relevant to this claim against Smith in his individual capacity, in accordance with the Court's orders – but then the Court allowed Defendants to present an entire day's worth of testimony about what Plaintiff was precluded from talking about.

V.    Plaintiff was improperly PRECLUDED FROM ANALYZING THE SONOMA COUNTY Sheriff Office's POLICY, including during trial.

VI.    Improper Influence

1.    Litigious (DEFENDANTS are the ones who chose to litigate this case, and to MAXIMIZE the cost for SONOMA COUNTY, The FEDERAL GOVERNMENT, and PLAINTIFF – and evidence of that, and that Plaintiff tried to resolve the incident was precluded, further double standards on the part of the Court).

2.    "[REDACTED]" (DEFAMATION)

3.    Law Enforcement Response to an Incident from 2005, misportrayal of what happened, and some other incident from 2006.

VII.   Since Plaintiff was acting as both representation and witness, the statement about criminal history should have, objectively been attributed to a statement by Counsel – not as witness.  It was not an answer to a question, but a general statement which would have been made by Counsel – if Plaintiff had been ASKED about it, Plaintiff wouldn't have made such a general statement – Plaintiff would have been more clear (and it would have been asked in a controlled setting). Plaintiff was under the most general/prolonged stress in the past 6 years, and had only gotten 3 hours sleep due to various misconduct committed by others.

Andrew Cash ALSO commented on Plaintiff's lack of criminal history, after looking into it, during the interview.

This statement WAS NOT GROUNDS TO BRING UP a COMPLETELY IRRELEVANT AND INADMISSIBLE EVENT WHICH WAS CLEARLY ESTABLISHED TO BE [REDACTED] AGAINST PLAINTIFF, and INCIDENT REPORTS READING "DO NOT DUPLICATE" FROM [REDACTED].   These baseless and COMPLETELY inadmissible unlawful attacks against Plaintiff at minimum can't be ruled out as determining factors in the jury's decision, particularly in conjunction with the heavily slanted improperly limited evidence against Defendants.

Lying (irrefutable, open violation of Rule 11, etc.) about Plaintiff's credibility, without discipline from the Court: Defense Counsel was allowed to effectively falsely attack Plaintiff's credibility, bringing up inadmissible evidence, defame Plaintiff, which involves negative accusations against Plaintiff which shouldn't be repeated as they cause damage to Plaintiff, things that happened which weren't Plaintiff's fault.  Previous misconduct by others against Plaintiff is not evidence of Plaintiff's actions.

VIII.   Disregard for Plaintiff's Motions, and for Fairness to Plaintiff, by This Court

IX.   WITNESSES

1.   John Barbour or Expert on Psychology –

Mr. Barbour planned to testify, then about a week and a half before the trial said it was

4

strictly against policy, and explained why.  However, Plaintiff could not be expected to get an expert on psychology, having expected Mr. Barbour to appear.

      2.     IMPARTIAL BYSTANDER WITNESS –

As the Court is aware, there was an impartial witness who saw the event, and stated, in Court, that he saw Defendant Smith's arm wrapped around Plaintiff's neck.  Plaintiff informed the Court that he had told the witness he could appear over zoom.  The Court, in the most forceful and assertive tone of voice used during the entire 3 years of litigation, stated in response, "You don't run this Courtroom, [Plaintiff]," then disallowed the witness from appearing on zoom, then the witness refused to appear at trial, only giving notice the day before trial (Sunday, March 13th, 2022).  The Court failed to inform Plaintiff that the witness had not contacted the Court with his schedule, as was expected, and Plaintiff presumed that the Court had been in contact with the witness.  Defendants had the witness's contact information since, at the very latest, they got the body worn cameras, but undoubtedly had his contact information the entire time, and failed to provide it, as required.

      3.     ROBERT SAGAN –

Plaintiff had absolutely no help, due to violations of the 14th amendment by the Pro Bono Legal Help Office.  Robert Sagan was scheduled to appear, Plaintiff presumed for BOTH PARTIES, and then was apparently withdrawn without ever informing Plaintiff.  Defendants' counsel has routinely acted deliberately deceptively, and there is absolutely no reason to doubt that that was the case here.

      4.     CHRIS MARTIN –

Plaintiff requested to present Chris Martin BEFORE Defendants requested to present James Naugle.  Defendants failed to provide a CV, failed to provide a report, failed to allow Plaintiff to take deposition, and Plaintiff was not allowed to question Mr. Naugle for more than 15 minutes at trial, and was barred from questioning him about failures of the Sheriff's Office policies.  Chris Martin probably has the most personal knowledge and experience out of anyone in the world on the dangers of "blood strangle" holds.  Plaintiff provided a CV, would have provided a report, and would have allowed deposition.  Plaintiff would request 14 days to

present these items, including a detailed list of Mr. Martin's personal knowledge, experience, and expertise, and a expert report.

X.     DEFICIENT POLICIES, TORTURE RINGS EXPLICITLY ENDORSED BY POLICY AND OFFICIAL RATIFICATION, FAILURE TO ADEQUATELY ADDRESS ISSUES IN THE JAIL, GROSS FAILURES TO TRAIN OR SUPERVISE, and the fact that NO CORRECTIVE MEASURES WERE TAKEN UNTIL 2018.

Plaintiff was NOT ALLOWED TO BRING EVIDENCE OF THE ABOVE ESTABLISHED FACTS  TO THE JURY.

XI.    DELIBERATE VIOLATIONS OF VARIOUS LAWS, TORTS, RULES OF PROCEDURE, RULES OF EVIDENCE, professional conduct, and deliberate complete disregard of Defense Counsel's violations by the Court, double standards

1. Laws:
    a. MALICIOUS DEFAMATION, Slander, Distributing Libelous Material.  (This Court stated "[REDACTED]"; I can't remember if it was in front of the jury or not, and it seemed likely that there was some other kind of preestablished mutual understanding.)
    b. MULTIPLE INSTANCES CONSTITUTING CRIMINAL and civil ASSAULT
    c. Title 18 Section 241, 242
    d. HIPAA VIOLATIONS
    i. Cash
    ii. Plaintiff's sister (Defense Counsel subpoenaed Plaintiff's medical records from Plaintiff's sister.)
2. Torts (not including duplicative criminal violations, such as defamation, assault, harassment, and malicious and aggravated infliction of distress):
    a. Abuse of Process
    b. Fraud
3. Rules of Procedure:   Rule 26, 11, 33, 30, 37, 36,

6

4. Rules of Professional Conduct: 3.1 Meritorious Claims and Contentions, 3.2 No causing undue delay, 3.3 candor before the tribunal, 3.4 fairness to opposing counsel, 3.5 no improper influencing the judiciary or jury,

5. Local Rules: 11-4, 30, 37, This Court's Standing Order regarding Motions for Summary Judgment

XII. Exclusion of Scientific Studies. Plaintiff was precluded to bring up admissible (under the Daubert standards peer reviewed treatises with the expert witnesses. Peer reviewed admissible Science was excluded, but proven heavily coached, obviously under instruction from legal counsel, "experts" from the Defendants' own corporation were admitted to speak to their own policies, which aren't relevant standards.

XIII: 5 years after the fact, Mr. Smith could not remember how he "drove Plaintiff to the ground". But the Court allowed him to testify about expert conclusions without support based solely on statements presented FOR THE FIRST TIME 5 years after the fact, but won't allow Plaintiff to present admissible scientific studies regarding what Defendant Smith testified about.

XIV: DISALLOWING PLAINTIFF TO PREPARE FOR OR ADEQUATELY QUESTION ANDREW CASH AND JAMES NAUGLE:

Plaintiff was not allowed to question James Naugle about the Esa Wroth case, where Wroth was tortured in precisely the same place Plaintiff was, filmed with handheld camera, in 2013, Defendants Sheriff's Office then allowed there to be, they contend, 1 single deputy, with multiple inmates able to walk around freely in the booking area, during the incident, with no cameras utilizing the recording functionality, or the Torture Ring case, where inmates were tortured in accordance with a policy, and the incident was officially ratified by supervisors, where one inmate, Danny Banks, suffered internal bleeding due to a knee into his back while he was in prone. Or the David Ward case, where he was killed AFTER PLAINTIFF had

Case 4:19-cv-02252-YGR   Document 205   Filed 03/21/22   Page 8 of 13

complained about the reckless use of the carotid hold and the dangers PRIOR TO THE STATE OUTLAWING THE HOLD, in email, to County Supervisors, and Plaintiff's Parents sending the state governor a complaint about it, and then David Ward was killed by Sonoma County Sheriff Deputy Charles Blount, after Blount had been exonerated from several previous instances of misconduct, and deliberate perjury under oath, in Court.

XV.     Plaintiff was precluded from asking about the dangers of the carotid hold, not allowed to compare to information that was acknowledged by BOTH EXPERT WITNESSES to be reliable and expert according to BOTH the experts presented at trial.  This information INCLUDED: (1) RELIABLE  AND CORRECT DETERMINATION OF LOSS OF CONSCIOUSNESS, (2) THE MAXIMUM SAFE AMOUNT OF TIME TO APPLY A "BLOOD STRANGLE" NECK squeezing techniques (what the Sonoma County Sheriff's Office terms a "carotid hold" is generally called a "Lateral Vascular Neck Restraint" everywhere else).

XVI.    Adverse Party, Andrew Cash:

1.      Cash was a major witness, and a defendant in this case, who was then named as Defendants' use of force expert, who was scheduled to appear, then they stated he was withdrawn (under objection, due to him being a major witness), then he was presented for 5 minutes to lie to the jury (one of about only 3-5 things that wasn't recorded), and then Plaintiff was not allowed to question him adequately.

2.      Plaintiff was not prepared to question Cash because both Defendants, and the Court made it abundantly clear that Cash had been "withdrawn" and would not appear, in spite of Plaintiff requesting he appear.  Plaintiff then failed to prepare to question Cash.  Cash came and lied under oath about the only thing not recorded in the interview, and Plaintiff was combination not allowed to question him and not prepared to.  Furthermore, Plaintiff was not allowed to testify about what happened in the rest (the actually recorded part) of the interview.

3.      Cash told Plaintiff he had interviewed the witnesses – Plaintiff was not prepared to question Cash

8

Mistrial - CHAMBERS COPY **CONFIDENTIAL**                             4:19-cv-02252-YGR

   4. Cash lied that he had not interviewed Azuzena Alvarez

   5. Plaintiff was not allowed to play the clip showing that Cash had been caught instructing the witnesses to refer to the preexisting reports by deputies prior to writing their own statements.

   6. Cash was accused of abusing his position (in accordance with the customs and practices of Sheriff's Office) to cover up the incident.  The Court mixed him up with another person Plaintiff named as a defendant (because of misinformation from the Attorney General's Office), who Plaintiff intended to voluntarily remove: Ronald Chestnut, and mistakenly dismissed Cash from the lawsuit, while making several other errors of fact (which can be precisely specified on request), at one time repeating verbatim the deliberate lies told by Defense Counsel (the Court may have not known they were deliberate lies, but the Court deliberately chose not to read Plaintiff's pleadings – this example can be precisely explained on request).

  XVII. Completely improper decision by the jury -

   1. It was established that plaintiff suffered an injury to the left side of plaintiff's neck that could have ONLY been caused by Defendant Smith's continued application of a carotid hold, by his right forearm against the left side of Plaintiff's neck

   2. It was established that an attempted carotid hold was unreasonable just for pushing off the ground

   3. It was clearly established that Plaintiff's immediate sprain to the neck was, to well beyond a preponderance of the evidence, due to APPLICATION of the carotid hold.

   4. It was established that Plaintiff had a serious injury to Plaintiff's kidney from the incident

   5. The jury must have some combination of not understood the definition of preponderance of the evidence, or based their decision on improper violations of the rules, improper influence, and inadmissible and misportrayed untrue attacks against Plaintiff's credibility committed by Defense Counsel.

   6. The jury relied on improper attacks on Plaintiff's credibility.  Plaintiff made

literally the biggest mistake in semantics in the past 5 years at trial.  Defense Counsel deliberately lied over and over (for example, misportraying Plaintiff's testimony as changing, falsely claiming that Plaintiff had gotten into a fight with Plaintiff's sister over a knit cap, falsely claiming that Plaintiff had broken down a door, in order to improperly influence the trier of fact.

XVII.   (As should have been expected,) The Court ALLOWED DEFENSE COUNSEL TO LIE TO THE JURY, and was, as usual, harsher with the pro se victim whose "cooperativeness" was weaponized by both Counsel and The Court, than with the PUBLIC GOVERNMENT ATTORNEY.

XIX.   Various other improper exclusion of relevant admissible evidence:
1. Forms filled out and signed by Fazzio
2, Original Complaint by Plaintiff
3. Transcripts of Interviews Conducted by Cash (after also disallowing adequate questioning)

XX.   2.5 months to prepare for trial, and 5 months less than Defense Counsel had.
Footnotes:
- David Ratner
- Pro Bono Legal Help Office
- No other legal aid will help people in my situation; none; the cost of litigation, in terms of regular attorneys fees, would have been1.5 million dollars, in attorneys fees alone.

XXI.   I wouldn't have been allowed to bring up all the deception committed by Defendants' counsel.  This is incredibly relevant to the claims and defenses, and not privileged, to my knowledge, and any privilege should be EXPLICITLY and authoritatively cited and the applicability of it should be FULLY explained – not just obliquely referred to with no explicit applicability.

XXII.  Plaintiff acted according to Court direction, and a lot of time was wasted, and then Plaintiff was explicitly barred from spending adequate time with the witnesses (Naugle, Cash, Smith).

XXIII. Plaintiff's disability interfered with effective advocacy during the trial –

**1.     Defendant Smith testified to the camera system's capability of recording, but as noted during a hearing with the Court, stated in his answer to the complaint that "no cameras existed in the vicinity capable of recording". (I'd have to reference the exact phrase to confirm it, I believe it was paragraph 22.)**  No reasonable jury could believe his testimony after that.  But Plaintiff wasn't able to retain and recall information well enough to point this out due to disability, literally resulting from brain injury from the carotid hold.

2.     Defendant Smith also corroborated that Plaintiff was picked up and placed on the bench in the holding cell, and that a deputy told Plaintiff that if he moved he would be tasered.  Again, this is just more cases of perfectly corroborating Plaintiff's extremely detailed statements of facts, which have been consistent over the 20+ times Plaintiff has written out what happened and testified about it on record to various government agencies.

*So Defendant Smith's story is that I was "thrashing", but magically completely stopped resisting before any other deputies arrived, was helped up, was seen by the nurse prior to going into the holding cell, then escorted into the holding cell, then picked up, and placed face down on the bench, then told I would be tasered if I moved.*

3.     Plaintiff can't retain information very well, or recall it easily on hand, due to the cognitive impairment from the carotid hold causing a rupture of the carotid artery and a subsequent stroke.  A minor stroke at age 32 is still an extremely serious injury.

XXIV. Making False Suggestions About Plaintiff's Medical History from 2005 to the Jury.  Defamation.

XXV. Adapting testimony to the evidence.

Examples: Defense Counselor Abelson accused Plaintiff of being "routinely untimely", even though Plaintiff had NEVER been untimely in the case. Counselor King weaponized the accusation of being "uncooperative" (and this Court followed suit). Defendant Smith's accusations against Plaintiff in the interview with Internal Affairs were of a confident, confrontational person who had never suffered extremely serious misconduct at the hands of law enforcement before (this is my brief characterization of his several examples of behavior and statements that he attributed to Plaintiff). He also said that Plaintiff is a "fairly large male", and Deputy Fazzio was a "smaller female", to Lt. Cash during the interview. At the trial, he changed his testimony to that Plaintiff was "whiny". They change their accusations to accord to their own narratives, with no regard to the truth. It is also irrefutable that Defense Counsel has *encouraged* his clients (PUBLIC GOVERNMENT EMPLOYEES) to LIE UNDER OATH, without regard to the federal criminal perjury laws.

XXVI: Plaintiff should have been granted bifurcation. Plaintiff has a RELIABLE memory, and it is obvious. That doesn't mean that Plaintiff doesn't have cognitive impairment from the incident. An expert witness should have been present to explain the way this works to the jury. Furthermore, despite the fact that Plaintiff has caused ZERO delay throughout this entire case, and Defendants' unlawful litigation tactics were condoned by this Court, Plaintiff was improperly admonished for the delay, and routinely improperly scapegoated for other people's misconduct throughout this trial. Plaintiff should have been free to request a continuance. But a request would have obviously been denied – <u>ALL</u> of Plaintiff's requests have been denied without consideration at all (except Plaintiff's objections to Defendant's Motion for Summary Judgment, if that would be included, that is the single exception).

XXVII:	Improperly excluding Plaintiff's witnesses:

It was misrepresented to the Court by Defense Counsel that Plaintiff had not disclosed "any" witnesses. This was a lie. Plaintiff included several witnesses in Plaintiff's initial

disclosures, and in Plaintiff's updated disclosures, and subsequently (upon request from Defense Counsel). Defense Counsel continued to demand Plaintiff's family members' physical locations, with complete disregard for the California Bill of Rights, despite Plaintiff attempting to work with Defense Counsel to schedule them to appear for deposition on request.

    Defendants have been accused of deliberate serious and sadistic TORTURE with deliberate intent to cause extremely serious bodily harm (crushing the neck for several minutes causing inability to breathe, and deliberately injuring Plaintiff's kidney, knowing the technique causes excruciating agony), failed to deny either of those things literally until trial, fraud, conspiracy, subsequent assault (realistic threat of physical harm), and abuse of government position of trust and power. Plaintiff's rights under both California (Article 1, Section 28), and Federal (Section 3771) Law should have been honored.

    Defense Counsel then forwarded the answer to his request to the Court as Plaintiff's witness list, and the Court not only accepted it as Plaintiff's contended witness list, but also believed Defense Counsel's unsupported contentions regarding the matter, and refused to listen to Plaintiff at the pretrial conference or to give Plaintiff permission to correct the matter despite request.

    Respectfully Submitted,

Dated: 3/21/22                                    By:   /s/Brian Best_____
                                                              BRIAN BEST
                                                              PLAINTIFF