# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**BRIAN BEST,**

            Plaintiff,

    vs.

**VIRGIL SMITH**

            Defendant.

CASE NO.  4:19-cv-2252-YGR

**OMNIBUS ORDER RE PENDING MOTIONS**

Dkt. Nos. 205, 206, 207, 208, 209, 211, 212, 214, 215, 216, 221, 222, 224, 229

On March 17, 2022, a jury found in favor of defendant Virgil Smith with respect to this Section 1983 action. (Dkt. No. 198.) Having tried jury cases for well over a decade, this case presented the single time when the jury, compelled to do their duty, nonetheless did so with grace and expressed compassion, writing on the jury note to plaintiff Brian Best:

> "It took a lot of courage for Mr. Best to stand up in front of this court and present your case. The jury appreciates it!"

(Dkt. No. 204, Jury Notes.)  The Court, and defendant, agreed.  Nevertheless, the facts remain that Mr. Best's constitutional rights were not violated.  Reduced to its essence, this trial concerned whether defendant Virgil Smith used a carotid hold on plaintiff during the booking process in the Sonoma County jail; and if so, whether it caused damage.  Ultimately, plaintiff's memory of the events, *from his perspective*, are different than those recalled by others, including an independent third party.  The jury believed the defendant.  No evidence, especially none from someone not present, will ever change that Mr. Best's recollection did not persuade.

Since the jury verdict, plaintiff has filed numerous motions raising various substantive arguments, including many issues and argument already decided. The following motions are currently pending before the Court which the Court lists in the order addressed herein: (1) Plaintiff's Motion to Disqualify the Judge (Dkt. No. 211); (2) Plaintiff's Declaration of Mistrial (Dkt. Nos. 205 and 206); (3) Plaintiff's Motion to Disqualify Counsel (Dkt. No. 207); (4)

Plaintiff's Motion to Stay (Dkt. No. 208); (5) Defendant's Bill of Costs (Dkt. No. 209); (6) Plaintiff's Motion to Strike the Bill of Costs (Dkt. No. 214) [1]; (7) Plaintiff's Motion to Continue Deadline to File an Appeal (Dkt. No. 212); (8) two Motions for Rule 11 Sanctions (Dkt. Nos. 215, 216); (9) Plaintiff's Motion to Amend the Complaint (Dkt. No. 221); (10) Plaintiff's Motion to Quash (Dkt. No. 222); (11) Second Administrative Motion For Transcripts (Dkt. No. 224); and (12) Plaintiff's Motion to Compel (Dkt. No. 229.)  Having considered the papers filed and accompanying submissions, as well as all other evidence of record, the Court hereby **DENIES** motions numbered above as 1-3, 5, 8-12; **GRANTS** motion number 6; and **GRANTS IN PART AND DENIES IN PART** the remaining motions for the reasons set forth below. [2]

***

## I.  MOTION TO DISQUALIFY

Plaintiff moves to disqualify the undersigned judge. Recusal is the process by which a federal judge may be disqualified from a given case. Motions to recuse a district judge are governed by two statutes, 28 U.S.C. § 144 and § 455. Plaintiff does not state which statute governs his motion, so the Court analyses the motion under both.

Section 455 provides that a federal judge "shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned," as well as in specific identified circumstances.  28 U.S.C. § 455(a), (b).  To determine whether a district judge should be removed for possible bias or prejudice under section 455(a), the Court should "ask whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (citations and internal quotation marks omitted).  "[T]he judge's conduct during the proceedings should not, except in the 'rarest of circumstances' form the sole basis for recusal under § 455(a)." *Id.* at 914. The Ninth Circuit has acknowledged myriad issues that ordinarily do not require recusal under

---

[1]  The Court liberally construes plaintiff's Motion to Strike the Bill of Costs as an opposition to the Bill of Costs.

[2]  Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds that the motions are appropriate for decision without oral argument.

section 455, including: "(1) rumor, speculation, beliefs . . . and similar non-factual matters; (2) the mere fact that a judge has previously expressed an opinion on a point of law; (3) prior rulings in the proceeding; (4) mere familiarity with the defendant(s) or the type of charge; (5) baseless personal attacks on or suits against the judge by a party; (6) reporters' personal opinions or characterizations; and (7) threats or other attempts to intimidate the judge." *Id*. at 914 n. 5 (internal quotations and citations omitted).

Plaintiff does not identify any extrinsic evidence of bias in this case. Instead he seeks to challenge the Court's decisions in denying plaintiff's previous motions.  Specifically, plaintiff alleges that the undersigned judge "held [plaintiff] to standards that don't even exist (dismissing my Motion for Summary Judgment improperly . . ." and "made serious errors of fact in her order dismissing Andrew Cash with prejudice in error . . . ."  (Dkt. No. 211 at 2.)

It is well-established that actions taken by a judge during the normal course of proceedings are not proper grounds for disqualification. *See United States v. Scholl*, 166 F.3d 964, 977 (9th Cir. 1999); s*ee also Leslie v. Grupo ICA*, 198 F.3d 1152, 1160 (9th Cir. 1999) (court's adverse rulings are not an adequate basis for recusal).  Further, plaintiff's motion does not demonstrate that this is one of the "rarest circumstances" in which disqualification should be granted based on a judge's rulings. The adequacy of a judge's rulings is properly saved for an appeal.

To the extent plaintiff is suggesting that the current motion should be referred to another judge pursuant to 28 U.S.C. § 144, that contention also fails.  Section 144 requires plaintiff to file an affidavit stating reasons for the belief that bias or prejudice exists.  *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980); *see also* Civil. L.R. 3-14 (outlining procedure for disqualification pursuant to 28 U.S.C. § 144).  Plaintiff has not filed an affidavit and fails to identify any facts demonstrating bias or prejudice against him.  The *pro se* plaintiff's pending motion, even if liberally construed to be an affidavit, would not mandate a referral for the reason that it is facially and legally insufficient.  "An affidavit filed pursuant to that section is not legally sufficient unless it specifically alleges facts that fairly support the contention that the judge exhibits bias or

3

prejudice directed toward a party[.]" *Sibla*, 624 F.2d at 868.[3]  Plaintiff's conclusory assertions are insufficient to support plaintiff's request.  Based on the foregoing the Court **DENIES** plaintiff's motion to disqualify the undersigned judge.

## II.     PLAINTIFF'S DECLARATION OF MISTRIAL

Plaintiff filed a declaration of mistrial after trial had already concluded.  Because the motion was made once trial concluded and judgment entered, the Court construes plaintiff's motion as a motion for a new trial.

In order to grant a motion for new trial under Rule 59, the trial court must find that "the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000).  "Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotation omitted).  Thus, in connection with a motion for new trial, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Constr., Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1371–72 (9th Cir. 1987) (quoting 11 Wright & Miller, *Fed. Prac. & Proc.* § 2806, at 48–49).  While there is no set formula, the Ninth Circuit has held that a court should grant a motion for new trial "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.*; *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1075 (N.D. Cal. 2006) *aff'd,* 221 F. App'x 996 (Fed. Cir. 2007) (same).  Where multiple theories could support the verdict,

---

[3] *Sibla* required that the bias or prejudice "stem from an extrajudicial source." *Sibla*, 624 F.2d at 868.  Since the Supreme Court has held that an extrajudicial source "is not a necessary condition for 'bias or prejudice' recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice." *Liteky v. United States*, 510 U.S. 540, 554 (1994).

United States District Court
Northern District of California

1    sufficient evidence as to any of one of them will defeat a motion for new trial.  *See McCord v.*

2    *Maguire*, 873 F.2d 1271, 1273-74 (9th Cir.), *opinion amended on denial of reh'g,* 885 F.2d 650

3    (9th Cir. 1989) ("When a general verdict may have rested on factual allegations unsupported by

4    substantial evidence, we will uphold the verdict if the evidence is sufficient with respect to any of

5    the allegations."); *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1121 (9th Cir. 2014) (same);

6    *S.E.C. v. Todd*, 642 F.3d 1207, 1213 n.1 (9th Cir. 2011) (on motion for new trial, where four

7    independent factual bases supported the jury verdict, reviewing sufficiency of evidence for all four

8    bases not necessary).

9          Plaintiff's motion rehashes many arguments that were previously addressed by the Court.

10   In summary, plaintiff bases his motion on arguments that (a) the jury's verdict is not supported by

11   the evidence; (b) defense counsel's conduct during trial warrants a new trial; and (c) claims that

12   this Court committed prejudicial error during trial.  The Court addresses each.

13         **A.      Improper Decision by the Jury**

14         Plaintiff argues that the jury reached an improper verdict because the evidence showed that

15   plaintiff suffered an injury to the left side of plaintiff's neck that could have only been caused by

16   defendant's actions. Plaintiff also argues that it was well-established that an attempted carotid hold

17   was unreasonable just for pushing off the ground.

18         The jury heard plaintiff's evidence and took plaintiff seriously but ultimately concluded

19   that plaintiff did not prove his case.  Substantial evidence was presented from which the jury could

20   readily conclude that defendant did not use excessive force on plaintiff in the booking area.

21   Plaintiff and defendant both testified that plaintiff abruptly turned towards a second deputy,

22   Fazzio, during the event. Contrary to plaintiff's characterization of the events, this was not just an

23   issue of plaintiff pushing off the ground. Plaintiff testified that his turn was not confrontational but

24   was instead done as a matter of natural reflex. By contrast, defendant testified that he interpreted

25   the turn to be a sign of aggression and that is when the take down occurred. Plaintiff also testified

26   that he did not initially obey deputy Fazzio's commands because he was confused about what he

27   was being asked.  Plaintiff conveniently ignores how this initial refusal to obey can be viewed

28

1    objectively to someone else.[4]  Plaintiff's own expert, Dr. Chuck Rylant, testified that everything

2    that occurred was reasonable, except for the use of a carotid hold.

3         Ultimately, plaintiff's motion rests not on a lack of evidence, but on plaintiff's own

4    interpretation of that evidence and how the jury should have believed him, not defendant Smith.

5    Obviously, the jury did not have to accept plaintiff's version of the evidence. It is the jury's

6    purview to decide what the evidence means, whether it is credible, and how to weigh it.[5]

7    Accordingly, plaintiff's motion for a new trial based upon the evidence presented is DENIED.

8         **B.     Claims of Prejudicial Conduct by Defendant's Counsel**

9         Next, plaintiff argues that he is entitled to a new trial because of defendant's counsel's

10   prejudicial misconduct.

11        A new trial is warranted on the ground of attorney misconduct during the trial where the

12   "flavor of misconduct . . . sufficiently permeate[s] an entire proceeding to provide conviction that

13   the jury was influenced by passion and prejudice in reaching its verdict."  *Anheuser-Busch, Inc. v.*

14   *Nat. Beverage Distributors*, 69 F.3d 337, 346 (9th Cir. 1995) (internal citation omitted).  Conduct

15   may be said to "permeate" the proceedings even if it occurs only at the end of a trial or in closing

16   statements.  *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1145 fn. 16 (9th Cir. 2001).

17   However, courts consider the likely prejudice from the conduct in light of the "totality of

18   circumstances, including the nature of the comments, their frequency, their possible relevancy to

19   the real issues before the jury, the manner in which the parties and the court treated the comments,

20   the strength of the case, and the verdict itself." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193

21   (9th Cir. 2002).

22

23   _____

24        [4] Indeed, plaintiff's own sister, Lindsay Best, testified that given his socially awkward
     nature and his difficulty with eye contact, he was bullied when younger and that he also looked
25   suspicious and as if he had done something wrong.  She also confirmed that sometimes plaintiff
     recalls things differently from others.

26        [5] In fact, the jury was instructed that they may "believe everything a witness says, or part
     of it, or none of it." In order to resolve issues of credibility, the jury may consider whether a
27   witness had been untruthful with respect to other parts of their testimony.  Here, the jury could
     have easily disbelieved Mr. Best's version of the events leading to his arrest in the first place and,
28   on cross-examination, he was shown to have stretched the truth multiple times.

United States District Court
Northern District of California

In summary, plaintiff asserts attorney misconduct during trial on five grounds.[6] First, plaintiff argues that defense counsel lied to the jury when counsel stated both that plaintiff had preexisting anemia, and that plaintiff continuously changed his story about what happened. As a threshold matter, evidence respecting each statement exists. During trial plaintiff testified about his prior medical conditions, including anemia.[7] Next, the record demonstrates, and the Court is keenly aware, of the inconsistencies with plaintiff's recollection of what happened during the event.  That he may not have had any manipulative intent is not relevant, the issue is the credibility of his memory.  Further, defense counsel comments did not permeate the proceedings but were appropriately made during closing argument and well within the range of allowable advocacy. Further, the Court consistently instructed the jury during the course of the trial that statements made by counsel were not evidence.

Second, plaintiff argues that counsel's statements and questioning of Dr. Rylant's credentials and expertise was improper because the questioning had nothing to do with Dr. Rylant's testimony on direct examination.  Not so. Credibility issues are a proper focus of cross-examination, and by extension, are related to the reliability of testimony made during direct examination.  Dr. Rylant testified that he was familiar with the Use of Force policies in San Luis Obispo County even though he never worked in San Luis Obispo County. With this testimony, it was appropriate for counsel to cross examine Dr. Rylant on his qualifications and expertise relating to departments Use of Force policies as such questioning fell within the scope of direct examination.

Third, plaintiff contends that a new trial is also warranted because counsel brought up plaintiff's criminal background during the trial. The record demonstrates that the Court explained to plaintiff, outside of the presence of the jury, that plaintiff opened the door to impeachment

---

[6]  The Court notes that many of the alleged conduct as to defendant's counsel relates to pretrial disputes upon which the Court has already ruled. The Court will not repeat those rulings here and instead focuses on plaintiff's allegations about counsel's alleged conduct during trial.

[7] Plaintiff and his sister both testified about the extent of plaintiff's preexisting medical conditions during trial. In addition to anemia, they testified that plaintiff suffered previous concussions as a result of unrelated events.

evidence when he testified that he had no criminal history. Counsel asked plaintiff what he meant when he said, "no criminal history" but plaintiff refused to define his own meaning of the phrase "criminal history." If plaintiff had, the impeachment could have been narrowed or cabined, but plaintiff refused to define what he meant by the term. Further, plaintiff's sister testified that as far back as high school plaintiff was passive and had no issues. By doing so, her testimony opened the door for contradictory evidence. The underlying documents regarding plaintiff's criminal history were not admitted and the line of questioning was cut off after defendant's counsel made the point.

Fourth, plaintiff argues that defendant's counsel's withheld certain training records for deputies Fazzio and Smith. These arguments are a rehash of the discovery disputes that occurred in front of Magistrate Judge Ryu on April 8, 2021. (*See* Dkt. No. 99.) To the extent certain records were ordered, and not produced, plaintiff should have brought a motion to compel such records in front of Magistrate Judge Ryu. Any claim of prejudice is belied by the delay in raising it now. Moreover, both deputies testified at trial and nothing stopped plaintiff from questioning them about their trainings and the curriculum upon which they relied.

Finally, plaintiff lists an alleged HIPAA violation as another reason for granting a new trial. Plaintiff fails to offer any argument as to the nature of the alleged violation and how it would warrant a new trial.[8] This alone is enough to deny this basis of the motion.  However, construing plaintiff's motion liberally, the Court assumes plaintiff's motion as taking issue with the admissibility of the Rohnert Park Urgent Care records during trial. These records were moved into evidence by plaintiff. Moreover, defendant provided plaintiff with a copy of the records before trial and plaintiff did not raise any objection to the records prior to trial. Thus, any claim of privilege during trial is belated.

Ultimately, the Court finds that plaintiff has fallen short of establishing that defendant's counsel's conduct during trial warrants a new trial. Plaintiff's motion contains little more than conclusory assertions devoid of any meaningful explanation of why the requested relief is warranted. Counsel acted well within the scope of allowable advocacy and plaintiff's

---

[8] (*See* Dkt. No. 205, at 6.)

United States District Court
Northern District of California

misunderstanding of the rules of evidence governing impeachment evidence and the scope of cross-examination does not change the result. Accordingly, plaintiff's motion for a new trial based upon misconduct by defendant's counsel is **DENIED**.[9]

### C.   Claims of Prejudicial Conduct by the Court

Plaintiff argues a new trial is warranted because the Court excluded relevant witnesses, evidence, and testimony and allowed for the introduction of inadmissible evidence.

As a preliminary matter, and as previously discussed with plaintiff, the Court notes that plaintiff did not comply fully with his Rule 26 disclosures, this Court's pretrial orders regarding discovery cutoffs, or the Court's standing order on trial readiness.  In fact, the Court afforded plaintiff far more latitude than would ever have been allowed a represented party to ensure that the jury was presented with the evidence of the event from each side's perspective. Here, plaintiff provided defendant with claimed exhibits and a witness list at the eleventh hour and many of the proffered exhibits and testimony were irrelevant to the issues at trial and/or inadmissible. Thus, they were excluded from being introduced at trial.

The Court spent significant time during the pretrial conferences explaining to plaintiff what hearsay is and what the relevant exceptions are. During the Court's first pretrial conference, plaintiff brought a thumb drive that contained the entirety of plaintiff's case file. Although under no obligation to do so, the Court spent considerable time reviewing the materials on plaintiff's entire thumb drive and explained what exhibits were admissible at trial and which ones were not. None of the proposed exhibits were printed, as required by the Court's standing order on trials. The Court explained why it was ruling the way that it did to plaintiff. (*See* Dkt. No. 175, "Pretrial Order No. 2").

Additionally, though not timely disclosed, and over defendant's objection, the Court allowed plaintiff to call a liability expert, a character witness, and a percipient witness. Despite his obligation to do so, plaintiff did not issue trial notices or subpoenas. Again, in an attempt to have a trial with the key witnesses, the Court also ordered defendant to produce four Sheriff employees

---

[9] To the extent plaintiff's motion for sanctions rely on arguments and/or facts presented here, the motion is **DENIED** for these same reasons.

United States District Court
Northern District of California

who witnessed the event which the defendant was not planning on calling affirmatively. Plaintiff was allowed to examine the witnesses. The Court ordered these witnesses to appear even though it was under no obligation to do so, in an effort to assist in fact finding.

Notwithstanding the Court's extraordinary efforts to assist plaintiff within the bounds of the Court's own obligation to be fair to both sides, plaintiff still attempted to introduce many of the evidence the Court had previously excluded. He continues to complain of the rulings. The Court discusses them below:

### 1.   Exclusion of Chris Martin

Plaintiff contends that the Court erred in excluding Chris Martin who he wanted to call as an expert. First, plaintiff did not disclose Mr. Martin as a possible expert when the parties exchanged witness lists in January 2022. Nor did plaintiff include Mr. Martin as an expert in the parties' joint witness exhibit list. (*See* Dkt. No. 162). It was not until a few days before trial that plaintiff requested to have Mr. Martin testify at trial.

Moreover, even had Mr. Martin been allowed to testify, the testimony was redundant and only tangentially relevant to damages. As noted above, this trial concerned whether defendant Smith applied a carotid hold; if so, whether it caused damage; and if so, how much. Plaintiff proffered that Mr. Martin would testify generically about the seriousness of the hold. Mr. Martin did not evaluate plaintiff or any of the evidence in this case. By contrast, plaintiff's police expert, Dr. Rylant, did review evidence and did testify as to the seriousness of the hold and its proper use. While Mr. Martin may have had more experience with respect to carotid holds, the jury heard evidence regarding that topic. Further, at most, Mr. Martin's testimony would have been relevant generically to damages. Given the lack of a liability finding, any error is not prejudicial.

### 2.   Testimony of James Naguel

Next, plaintiff avers that the Court's order allowing for defendant's expert, James Naguel, to testify at trial was prejudicial. Here, again, despite plaintiff having not followed the rules, the Court allowed Dr. Rylant to testify at trial. Like plaintiff's other witnesses, Dr. Rylant was not timely disclosed. The Court only became aware of plaintiff's intent to call Dr. Rylant days before the Court's pretrial conference when defendant filed a motion to exclude Dr. Rylant.

In deciding the motion *in limine*, over defendant's objection, the Court denied the motion and allowed Dr. Rylant to testify. To be fair to the defendant, the Court also allowed defendant to call Mr. Naguel as a rebuttal use of force expert. Further, despite having in-court witnesses, the Court allowed Dr. Rylant to testify via Zoom to decrease the out-of-pocket cost to plaintiff. By contrast, the Court did not allow Mr. Naguel to testify via Zoom. Mr. Naguel appeared in person, and plaintiff was allowed to cross-examine him for more than half an hour. In addition, the Court limited Mr. Naguel's testimony to the scope of defendant's original use of force testimony. Given this limitation, plaintiff did not suffer prejudice as he never deposed defendant's original use of force expert, nor did he indicate that he intended to depose Mr. Naguel.

The testimony of Mr. Naguel is not a basis to order a new trial.

### 3.    Absence of Alberto Alvarez[10]

Plaintiff argues that because his fact witness, Alberto Alvarez, did not appear to testify, a new trial is warranted.

By way of background, during the pretrial conference, the Court learned that Mr. Alvarez, who was arrested at the same place as plaintiff (in an unrelated incident), had probative testimony since he witnessed part of the events while in the Sonoma County booking area at the jail. Again, to facilitate the truth-finding function, the Court took the usual step of calling Mr. Alvarez and questioning him, on the record, about the scope of his knowledge of the facts during the incident. Having heard Mr. Alvarez's possible testimony, and even though plaintiff had not secured his testimony, the Court allowed Mr. Alvarez to be called as a witness, over defendant's objection. Despite the Court's accommodations, plaintiff did not subpoena Mr. Alvarez. Plaintiff later advised that Mr. Alvarez had consulted with a lawyer and decided not to appear at trial. The Court explained that because plaintiff had not subpoenaed Mr. Alvarez, the Court could not order him to appear.

In any event, had Mr. Alvarez appeared at trial, his testimony would have had little

---

[10] On July 21, 2022, plaintiff filed a motion to compel Mr. Alvarez and officer Sagan's testimony. (*See* Dkt. No. 229.) Plaintiff's belated motion to compel is hereby **DENIED**. There is no need for additional discovery given the Court's order denying plaintiff's motion for a new trial.

United States District Court
Northern District of California

probative value to the issue of whether the carotid hold was used. When speaking with the Court, Mr. Alvarez explained that he did not see enough of the incident to know whether the carotid hold was applied. Notably, Mr. Alvarez also *disputed* some of plaintiff's own recollection of the facts of the incident.  For instance, plaintiff was adamant that he was carried to the holding cell and Mr. Alvarez was confident that plaintiff was not.

The failure of Mr. Alvarez to testify is not a basis to order a new trial.

### 4.    Exclusion of Cognitive Impairment Witnesses

Next, plaintiff argues that the Court improperly excluded his cognitive impairment witnesses, Laura Zaccheo and Mariah Gasparinni.

The two referenced individuals were not properly disclosed nor were they present at the event.  Rather they were plaintiff's neighbors, and he wanted them to testify generally as to his inability to remember things.  Plaintiff does not explain how either testimony would be relevant given that both witnesses did not know plaintiff before the event and only met him after so they had no ability to comment on the relative change in memory. Thus, the proffered testimony had, at most, very little relevance to the issues at trial. In any event, and again, despite the lack of compliance, the Court allowed plaintiff's sister, Lindsay Best, to testify about the change in plaintiff's cognitive impairments.  Thus, the jury heard evidence in this regard.

Moreover, at most, the testimony is generically related to damages.  Given the lack of a liability finding, any error is not prejudicial.

### 5.    Absence of Arresting Officer Robert Sagan

Next, plaintiff argues that the Court improperly excused the arresting officer, Robert Sagan, from testifying at trial.[11]  Officer Sagan works for Rohnert Park Police Department; and not Sonoma County.  As with others, plaintiff did not issue a trial subpoena or notice for Officer Sagan and instead presumed that he would be called to testify because he was listed on

---

[11] By way of background, plaintiff was arrested by the Rohnert Park Police Department for breaking and entering a construction site during the middle of the night.  As is routine protocol, the officers took plaintiff to the Sonoma County Sheriff's facility for booking and detention.

United States District Court
Northern District of California

United States District Court
Northern District of California

defendant's witness list.[12] Defendant decided not to call Officer Sagan at trial. Plaintiff was informed that it was possible that Mr. Sagan would not be called to testify. Without a trial subpoena, Officer Sagan could not be compelled to testify at trial.

Again, Officer Sagan's testimony was tangential at best.[13]  The events at issue occurred in the booking area with a different law enforcement agency.  Officer Sagan was not present. Plaintiff argued that he showed calm and polite demeanor during his initial arrest and therefore he must have acted in the same manner when he was with defendant in the booking area. [14] The point is not necessarily true, but in any event, the Court allowed the video from the arrest.  Thus, the jury was presented with the precise evidence he claims was lacking.

Thus, given the evidence was minimally probative and redundant, no prejudice existed from its exclusion and a new trial is not warranted on that basis.

### 6.   Testimony of Andrew Cash

Plaintiff argues that Andrew Cash was allowed to lie under oath and testified as to hearsay. Mr. Cash, former Internal Affairs Investigator with the Sonoma County Sheriff's Department, was called by the defendant to testify about his face-to-face conversations with Mr. Best shortly after the incident. To the extent that plaintiff complains of a party's admissions as being hearsay, they are explicitly allowed under Federal Rules of Evidence 801(D)(2).

In this motion, plaintiff does not explain what the alleged hearsay is or how it was prejudicial.  Moreover, the issues that plaintiff identifies as "lies" by Mr. Cash, including whether he interviewed all six deputies, are irrelevant to the issues that were tried. Additionally, the

---

[12] The Court notes that its standing order for civil trial requires the simultaneous exchange of witnesses, so plaintiff should have had his own list of witnesses.

[13] In this regard, plaintiff wasted considerable time presenting evidence not probative of the issue of excessive force, such as the arrest, a "fire drill" which was happening in the building, and character evidence.  In many ways, plaintiff used the trial for discovery, much like a deposition, and consequently wasted time.

[14] Throughout the trial plaintiff gave, and elicited, testimony about his calm and polite demeanor both before and during the incident. However, the jury did not need to accept such evidence as true for purposes of the actual event at issue. The jury watched plaintiff's demeanor in the courtroom. Plaintiff repeatedly argued issues and did not always follow the Court's instructions if he was not satisfied with the Court's ruling.

complained-of statements are Mr. Cash's perspective on what he recalls Mr. Best telling him. For instance, Mr. Cash testified that plaintiff did not originally mention anything about losing conscious during his initial interview. Plaintiff disagrees with this characterization of events and testified that he lost consciousness momentarily during the incident. Plaintiff fails to recognize that just because a witness and/or party has a different view than he, does not, by definition, mean the witness is lying. Plaintiff's views and recollection of events are subjective and do not control. As with any trial, there were disputed facts throughout.

### 7.   Exclusion of Plaintiffs' Proffered Evidence of Other Use of Force Incidents

Plaintiff contends *other* use of force incidents with the Sonoma County Sherriff's department should have been allowed and exclusion was improper. The Court explained and discussed extensively at the pretrial conferences that other incidents were not proper topics for plaintiff's individual claim.  All documents discussing these other incidents (news articles) were properly excluded as hearsay because plaintiff wanted to introduce them for the truth of the matter asserted and no exception applied. (*See* Pretrial Order No. 2, at 3.)

Additionally, the documents were irrelevant because plaintiff's claim is against defendant Virgil Smith in his individual capacity. Plaintiff did not have a surviving claim against the sheriff or the department under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Court also excluded them on the grounds that the documents had very little probative value and were prejudicial to defendant.

### 8.   Exclusion of Email Correspondences

Plaintiff argues that the Court improperly excluded his post-event email correspondence with Sonoma County employees Mr. Cash and Ms. Kara Abelson explaining the circumstances around the alleged wrist grab and litigation documents. However, as previously ruled, such emails are hearsay because they were being offered for the truth of the matter asserted. (*See* Pretrial Order No. 2, at 5-6.)

### 9.   Exclusion of Scientific Studies and Treatises

Plaintiff contends that he was precluded from proffering any scientific studies and treatises on the carotid hold. As previously ruled, such treatises and books are hearsay and not self-

14

authenticating. (*Id.* at 5.) Plaintiff argues, again, that such materials are admissible under the *Daubert* standard because they are purportedly written by experts. Plaintiff misunderstands the standard. The *Daubert* standard is the standard used by a judge to assess whether a testifying expert witness's opinions is based on scientifically valid reasoning that can be properly applied to the facts of the case. Here, the experts who authored the books and/or treatises were not testifying in this case, thus the *Daubert* standard is inapplicable.

### 10.   Exclusion of Dr. Rylant's CV into Evidence

Plaintiff avers that the Court improperly excluded Dr. Rylant's CV. However, such information was excluded as hearsay because plaintiff wanted to offer the CV to prove Dr. Rylant's qualifications.  Plaintiff fails to understand that just because someone puts their "qualifications" on a piece of paper does not make it true.  Unfortunately, many people are not truthful on resumes or CVs.  Thus, testimony under penalty of perjury is required.  In any event, Dr. Rylant did give the jury information on his background and qualifications.  Plaintiff had a chance to question Dr. Rylant at trial. Indeed, plaintiff questioned Dr. Rylant about his qualifications.

### 11.   Excluded from Testifying about Damages

Plaintiff argues that he was excluded from testifying about damages. Plaintiff previously requested that the Court bifurcate the trial and let liability proceed before the damages. The Court granted the request and explained that evidence of damages would only be introduced if plaintiff received a verdict on liability in his favor. (*See* Pretrial Order No. 2, at 1-2.) Because plaintiff did not receive a verdict on liability in his favor, there was no damages phase of trial.

### 12.   Defendant's Counsel's Testimony about Plaintiff Being Litigious

Next, plaintiff argues that the Court allowed defendant's counsel to wrongly paint plaintiff as litigious. This argument arises from counsel's cross-examination of plaintiff when counsel brought up plaintiff's prior lawsuit where plaintiff sued his landlord for his apartment deposit back.  During his direct testimony, plaintiff testified about a time that he had sued his previous landlord for the return of his security deposit. Plaintiff testified that it was not until after the parties went to Court that plaintiff remembered that the deposit had in fact been returned and

plaintiff used the money to pay off preexisting debt.  Plaintiff used this example to show how sometimes he suffers from cognitive impairment. With that testimony, plaintiff opened the door for defendant's counsel to ask plaintiff more about the lawsuit over the deposit. Thus, counsel's questions about the incident during cross-examination were within the scope of plaintiff's direct testimony.

### 13.   Newly Appointed Counsel Causing Delay

Plaintiff contends that his pro bono attorney caused delay in this case and prohibited him from being able to prepare for trial.

By way of background, once plaintiff survived summary judgment, the Court offered to find plaintiff pro bono counsel to assist with trial preparation. Plaintiff indicated a willingness to have the Court try and locate pro bono counsel. The Court stayed the case while it searched for counsel for plaintiff. (*See* Dkt. Nos. 125, 127.) In the order referring the case to the Federal Pro Bono office to locate counsel, the Court explained that counsel's representation was limited to trial preparation, "discovery has closed," and that the case was to be taken to trial "based on the record developed." (Dkt No. 125.) Less than one month later, attorneys David S. Ratner and Shelley Molineaux appeared on plaintiff's behalf. (Dkt No. 127.) Only then did the Court set a trial date in this case. After approximately three months of being represented by counsel, plaintiff filed a motion to have counsel withdraw because plaintiff wanted counsel to exceed the scope of their pro bono representation and file a motion to reopen discovery. The Court granted the motion to withdraw.

While plaintiff was well within his right to decide to try the case without counsel, plaintiff cannot manufacture an issue by requesting counsel, firing counsel, and then arguing that counsel caused a delay. Further, plaintiff has not identified what, if any, motions he would have filed during the time the case was stayed. To the extent plaintiff argues that he would have filed a motion to reopen discovery during that time had he not been represented by counsel, such argument is moot given the Court's denial of plaintiff's subsequent motion to reopen discovery. Plaintiff was on notice that discovery would not be reopened once a lawyer appeared. Plaintiff claims that two judges in this District allow for discovery to be opened once a pro bono attorney is

United States District Court
Northern District of California

assigned. While that may or may not be true as to other judges' practices, that is not this Court's practice. In any event, plaintiff has never demonstrated good cause to reopen discovery and, on plaintiff's behalf, the Court allowed evidence core to the dispute which had not been timely produced.

This is not a basis to order a new trial.

\* \* \*

Ultimately, plaintiff fails to establish any basis upon which a new trial is warranted. The complaint rehashes many evidentiary issues that were previously decided before the start of trial. Further, many of plaintiff's arguments rest on his own misunderstanding of the Federal Rules of Evidence and the scope of cross-examination. Accordingly, plaintiff's motion for a new trial based on the Court's conduct is **DENIED**.

In sum, plaintiff has not established that a new trial is warranted based on conduct by the Court or counsel, and the jury's verdict is supported by the evidence at trial. Accordingly, the motion for a new trial is **DENIED**. [15]

### III.   PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL [16]

Whether to disqualify counsel is a matter firmly committed to the district court's discretion. *See Gas–A–Tron of Ariz. v. Union Oil Co. of Calif.,* 534 F.2d 1322, 1325 (9th Cir.1976). The Civil Local Rules for the Northern District of California provide that every attorney practicing in this District must "comply with the standards of professional conduct required of the members of the State Bar of California." N.D. Cal. Civ. Local Rule 11–4(a)(1). As a result, when ruling on a motion to disqualify, the Court applies California law. *Genentech, Inc.*

---

[15]  Plaintiff also filed a motion to quash defendant's statement that "plaintiff (acting pro per) did not comply with court orders or committed any kind of misconduct during discovery." It is not clear to the Court what plaintiff is asking the Court to quash. Even liberally construing plaintiff's motion as a motion to strike, it is not clear what the Court should strike. Accordingly, the Court **DENIES** plaintiff's motion to quash.

[16] The Court notes that plaintiff attached two exhibits to his motion, one titled Motion for Sanctions and the other titled Complaint about Counselors Michael King and Kara Abelson. The Court has considered them in both its ruling on the Motion to Disqualify Counsel and the Motions for Sanctions.

1    *v. Sanofi–Aventis Deutschland GMBH,* C08–04909 SI, 2010 WL 1136478 at *4 (N.D.Cal.Mar.20,

2    2010) (citing *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.,* 264 F.Supp.2d 914

3    (N.D.Cal.2003)); *see also In re County of Los Angeles,* 223 F.3d 990, 995 (9th Cir.2000) ("we

4    apply state law in determining matters of disqualification"). The Court therefore looks to the

5    California Rules of Professional Conduct, and cases interpreting those rules, in reaching its

6    decision on this motion.

7    　　　Under California law, disqualification of counsel is employed to protect the integrity of the

8    judicial process by enforcing counsel's duties of confidentiality and loyalty. *People ex rel. Dept.*

9    *of Corporations v. SpeeDee Oil Change Systems, Inc.,* 20 Cal.4th 135, 1146–1147 (1999); *see*

10   *also Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283–284 (1994). "Ultimately, disqualification

11   motions involve a conflict between the clients' right to counsel of their choice and the need to

12   maintain ethical standards of professional responsibility." *SpeeDee Oil Change,* 20 Cal.4th at

13   1145. Generally, motions to disqualify counsel are disfavored since they may "pose the very threat

14   to the integrity of the judicial process that they purport to prevent." *Visa U.S.A. v. First Data*

15   *Corp.,* 241 F.Supp.2d 1100, 1104 (N.D.Cal.2003), quoting *Gregori v. Bank of America,* 207

16   Cal.App.3d 291, 300–01 (1989). Thus, the Ninth Circuit has held that requests for disqualification

17   "should be subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v.*

18   *Style Cos.,* 760 F.2d 1045, 1050 (9th Cir.1985) (citations omitted).

19   　　　Here, the Court finds that plaintiff has not met his burden to show that he has a basis to

20   seek disqualification of defendant's counsel. First, a party does not typically have standing to

21   bring a motion to disqualify counsel unless the party is a former client of the attorney whom which

22   the party seeks to disqualify. *See Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998).  Plaintiff

23   has never indicated that he was ever a client of counsel. Rather, plaintiff primarily complains

24   about counsel's chosen litigation strategies and the parties' differing views of the facts of this case.

25   That is not enough to warrant disqualification.  Further, the timing and delay of plaintiff's motion

26   suggest that disqualification would be particularly inappropriate here as the trial has concluded

27   and verdict rendered. Based on the foregoing the Court **DENIES** plaintiff's motion to disqualify

28   defense counsel.

**IV.   MOTION TO STAY/ MOTION FOR CONTINUANCE**

**A.   District Court Proceeding**

It is well settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Whether to issue a stay in a case is based on the court's sound discretion and basic principles of equity, fairness, efficiency, and conservation of judicial resources. *See Filtrol Corp. v.* Kelleher, 467 F.2d 242, 244 (9th Cir. 1972).

With respect to this Court's deadlines, the Court hereby **DENIES** plaintiff's motion to stay this Court's deadlines. Plaintiff has filed replies to his pending briefs and responded to defendant's bill of costs. The case was tried to a jury and judgment was entered. Thus, there is nothing left to stay in this action. Accordingly, the motion is **DENIED**.

**B.   Notice of Appeal to Ninth Circuit**

Motions to alter and/or extend a party's deadline to file a notice of appeal are governed by 28 U.S.C. § 2107(c) and Federal Appellate Rule 4.

Under Section 2107, "[t]he district court may, upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal, extend the time for appeal upon a showing of excusable neglect or good cause." 28 U.S.C. § 2017(c). Rule 4 similarly provides "t]he district court may extend the time to file a notice of appeal  if . . . a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires[ ] and . . . that party shows excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A).  Under Rule 4, "no extension may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later." Fed. R. App. P. 4(a)(5)(C).

On March 29, 2022, plaintiff requested a five-month extension so that he can take care of personal and health matters.[17] Construing the pleadings liberally, plaintiff has demonstrated good

---

[17]   The Court makes no statement as to the relevance and/or nature of plaintiff's medical treatment.

United States District Court
Northern District of California

cause for a short extension at this juncture. Nearly four months have passed since the filing of the original motion. The Court finds plaintiff's request was timely.

Here, the Court hereby **GRANTS** the motion in part. Accordingly, the Court grants a 30-day extension after the time prescribed in Rule 4(a). Notwithstanding that, plaintiff's request for a five-month extension is **DENIED** as four months has already passed.[18] In sum, plaintiff's motion to stay and motion for a continuance is **GRANTED IN PART AND DENIED IN PART**.

## V.    BILL OF COSTS

Defendant filed a bill of costs totaling $8,261.01. An award of standard costs in federal court is normally governed by Federal Rule of Civil Procedure 54(d)." *Champion Produce, Inc. v. Ruby Robinson Co.,* 342 F.3d 1016, 1022 (9th Cir. 2003). Rule 54(d)(1) states: "[u]nless a federal statute, these rules, or a court order provides otherwise, costs-other than attorney's fees—should be allowed to the prevailing party . . . ." Fed. R.Civ.Proc. 54(d). The types of costs that may be awarded under Rule 54(d) are limited to those enumerated in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441–442 (1987).

District courts have "wide discretion" in determining whether and to what extent prevailing parties may be awarded costs pursuant to Rule 54(d). *K–S–H Plastics, Inc. v. Carolite, Inc.,* 408 F.2d 54, 60 (9th Cir. 1969). Rule 54(d)(1) creates a presumption in favor of awarding costs to a prevailing party, but the district court may refuse to award costs within its discretion. *See* Fed. R. Civ. P. 54(d)(1); *Association of Mexican–American Educators v. California,* 231 F.3d 572, 591 (9th Cir. Cal. 2000) (denial of costs upheld in action regarding allegedly discriminatory test by public school districts). The losing party has the burden to "show why costs should not be awarded." *Save Our Valley v. Sound Transit,* 335 F.3d 932, 944–45 (9th Cir. 2003) (award upheld in action to challenge to route of light rail line).

The Ninth Circuit has held that proper grounds for denial of costs under Rule 54 include: "(1) a losing party's limited financial resources; (2) misconduct by the prevailing party; and (3)

---

[18] The Court notes that the deadline for plaintiff to appeal has effectively been stayed for five months given the pendency of this motion for new trial and the grant of a 30-day extension to file the notice of appeal.

'the chilling effect of imposing . . . high costs on future civil rights litigants, as well as (4) whether 'the issues in the case were close and difficult'; (5) whether 'the prevailing party's recovery was nominal or partial'; (6) whether 'the losing party litigated in good faith'; and (7) whether 'the case presented a landmark issue of national importance.' " *Champion Produce, Inc. v. Ruby Robinson Co., Inc.,* 342 F.3d 1016, 1022 (9th Cir. 2003).

Here, plaintiff's limited financial resources as indicated by his *in forma pauperis* status and his status as a pro se civil rights litigant support denying defendants bill of costs.  The Court finds that while plaintiff did not prevail, he pursued his action in good faith.  Accordingly, defendants bill of costs is **DENIED,** and defendant's costs are not taxable to plaintiff. That said, plaintiff's arguments about the nature of defendant's conduct and statements made to plaintiff are not well-taken and do not form a basis for the Court's decision.

## VI.    MOTIONS FOR RULE 11 SANCTIONS

Plaintiff has filed two motions for Rule 11 Sanctions against defendant's current counsel and former counsel. Rule 11 sanctions are appropriate "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. Cty. of L.A.*, 120 F.3d 982, 985 (9th Cir. 1997). Accordingly, Rule 11 sanctions may be imposed: "[ (1) ] where a litigant makes a 'frivolous filing,' that is where he files a pleading or other paper which no competent attorney could believe was well grounded in fact and warranted by law; and [ (2) ] where a litigant files a pleading or paper for an 'improper purpose,' such as personal or economic harassment." *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987).

A frivolous filing is one that is "*both* baseless *and* made without a reasonable and competent inquiry." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) (emphasis in original).

The party moving for Rule 11 sanctions has the burden to demonstrate why sanctions are justified. *See Tom Growney Equip., Inc. v. Shelley Irrigation Dev., Inc.*, 834 F.2d 833, 837 (9th Cir. 1987). The Ninth Circuit has held that such sanctions are "an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). Sanctions are reserved for "rare and exceptional case[s] where the action is

1   clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper

2   purpose." *Id.* at 1344. "Rule 11 must not be construed so as to conflict with the primary duty of an

3   attorney to represent his or her client zealously." *Id.*

4          As a preliminary matter, both motions rehash several issues that were already litigated and

5   decided by the Court. (*See* Dkt. Nos. 85, 92.) Further, plaintiff has not satisfied his burden of

6   demonstrating why sanctions are justified. Plaintiff's motion contains little more than conclusory

7   assertions devoid of any meaningful explanation of why the request relief is warranted. The

8   complained-of conduct by counsel is well within the scope of allowable advocacy. Moreover,

9   having tried the case, the Court is keenly aware of counsel's conduct, both current and former,[19]

10  and finds that counsel's conduct did not raise to the level of that warranting sanctions. Counsel has

11  been patient with plaintiff and acted with the upmost professional courtesy and respect towards

12  plaintiff. Disagreements about the facts of the case, without more, is not enough to warrant

13  sanctions.

14         In sum, plaintiff's motions for Rule 11 sanctions are **DENIED**.

15  **VII.    MOTION TO AMEND COMPLAINT**

16         Plaintiff filed a proposed third amended complaint at Dkt. No. 221 on April 9, 2022, after a

17  trial on the merits. Given plaintiff's *pro se* status, the Court liberally construes such filing as a

18  Motion for Leave to File an Amended Complaint.

19         Federal Rule of Civil Procedure 15(a) provides that a trial court should "freely give leave

20  when justice so requires." Generally speaking, the rule is "to be applied with extreme

21  liberality." *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir.

22  2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

23  That said, "leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902

24  F.2d 1385, 1387 (9th Cir. 1990).

25         In deciding whether justice requires granting leave to amend, court weighs the following

26  factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the

27

28         [19] The Court notes that it did not preside over any of the discovery disputes but sees
       nothing in the record to suggest that Rule 11 was violated.

United States District Court
Northern District of California

amendment; and (5) whether the movant has previously amended its pleadings to cure deficiencies, ("Foman factors"). *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Of these factors, "the consideration of prejudice to the opposing party [ ] carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Undue delay alone cannot serve as the basis for the denial of leave to amend." *In re Tracht Gut, LLC v. L.A. Cty. Treasurer & Tax Collect*or, 836 F.3d 1146, 1155 n.4 (9th Cir. 2016).

The Court **DENIES** plaintiff's Motion for Leave to Amend as **MOOT** given the Court's ruling on plaintiff's motion for a new trial. Further, the motion is untimely. The Court previously granted plaintiff's request to file a Third Amended Complaint on November 13, 2020 (Dkt. No. 74) and gave plaintiff detailed instructions on filing an amended complaint, including "set[ting] forth each claim in a separate numbered paragraph" and the facts and resulting injuries relevant to each claim. Plaintiff's proposed motion does not do that. Rather, it is largely a rehash of his prior complaints. Moreover, plaintiff has not demonstrated good cause for such delay. Additionally, allowing plaintiff to amend his complaint now, once trial has already occurred and judgment has been entered against plaintiff, would be highly prejudicial to defendant. Based on the foregoing reasons, plaintiff's Motion to For Leave to Amend is **DENIED**.

## VIII. MOTION FOR TRANSCRIPTS

Requests for transcripts by litigants proceeding *in forma pauperis* is govern by 28 U.S.C. § 1915. Section 1915 provides, in pertinent part, that for proceedings *in forma pauperis*, "the court may direct payment by the United States of the expenses of (1) printing the record on appeal in any civil . . . case, if such printing is required by the appellate court; [and] (2) preparing a transcript of proceedings before a United States magistrate in any civil . . . case, if such transcript is required by the district court . . . ." *Id*. at § 1915(b).

Section 1915 makes clear that a litigant proceeding *in forma pauperis* is only entitled to a waiver of fees for certain transcripts when the transcript is needed for an appeal or review of a proceeding of another judge or court. No such proceeding is currently pending. Therefore, plaintiff's request for a fee waiver is **DENIED**.

**IX.     SUA SPONTE REVOKING OF IN FORMA PAUPERIS STATUS ON APPEAL**

Federal Rule of Appellate Procedure ("FRAP") 24 governs motions to proceed *in forma pauperis* ("IFP") on appeal. Under Rule 24(a)(3)(A), "a party who was permitted to proceed *in forma pauperis* in the district court action . . . may proceed on appeal *in forma pauperis* without further authorization, unless . . . the district court—before or after the notice of appeal is filed – certifies that the appeal is not taken in good faith."

The Court finds there are no valid grounds on which an appeal can be based. Consequently, the Court certifies that any appeal taken from any order in this action will not be taken in good faith and is therefore frivolous.  FRAP 24(a)(3)(A); *Ellis v. United States*, 356 U.S. 674, 674– 75 (1958); *Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002). Accordingly, plaintiff's IFP status is **REVOKED**.

The Clerk shall forthwith notify plaintiff and the Court of Appeals of this Order.  *See* FRAP 24(a)(4).  Plaintiff may file a motion for leave to proceed IFP on appeal in the Ninth Circuit within thirty (30) days after service of notice of this Order.  *See* FRAP 24(a)(5).  Any such motion "must include a copy of the affidavit filed in the district court and the district court's statement of reasons for its action." *Id*

*** * ***

For the foregoing reasons, the Court orders as follows:

- Plaintiff's Motion to Disqualify the Judge is **DENIED**;

-  Plaintiff's Declaration of Mistrial is **DENIED**;

- Motion to Compel is **DENIED**;

- Plaintiff's Motion to Disqualify Counsel is **DENIED**;

-  Motion to Stay/ Motion to Continue Deadline to File an Appeal is **GRANTED IN PART AND DENIED IN PART**. If plaintiff does not intend to request *in forma pauperis* status on appeal, any notice of appeal must be filed with the Ninth Circuit within 58 days from the date of this order.

However, if plaintiff intends to file a request to proceed *in forma pauperis* on appeal, both the notice of appeal and request to proceed *in forma pauperis* must be filed within 30 days

of the date of this order in order to conform with the rule setting forth the deadline to file a request to proceed *in forma pauperis*.  This Court does not believe it has authority to extend plaintiff's deadline to file a request to proceed *in forma pauperis* on appeal.

- Defendant's Bill of Costs is **DENIED** and Plaintiff's Motion Opposing the Bill of Costs is **GRANTED**;
- Motions for Rule 11 Sanctions is **DENIED**;
- Motion to Amend the Complaint is **DENIED**;
- Plaintiff's Motion to Quash is **DENIED**;
- Second Administrative Motion For Transcripts is **DENIED**; and
- Plaintiff's IFP status is **REVOKED**. Any request to proceed *in forma pauperis* must be filed in the Ninth Circuit within 30 days from the date of this order.


This Order terminates the case.

The clerk is directed to close the file.

**IT IS SO ORDERED**.

Dated: July 26, 2022

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California