BRIAN BEST

PLAINTIFF

# UNITED STATES DISTRICT COURT

## Northern District, Oakland Division

| | |
|---|---|
| BRIAN BEST,<br><br>             Plaintiff,<br><br>      vs.<br><br>VIRGIL SMITH, SONOMA COUNTY, et. al.,<br><br>             Defendants. | Case No: 4:19-cv-02252-YGR<br><br>**MOTION FOR RECONSIDERATION RE PLAINTIFF'S AMENDED MOTION FOR A MISTRIAL** |

**Preliminary Note:**

First I address the Court's statement in Dkt #232: something like, "Any new motions Plaintiff files will be summarily dismissed, and Plaintiff's ECF privileges may be revoked":

This motion is filed in good faith, like all Plaintiff's other motions, and makes good faith arguments that Plaintiff's Amended Motion for a Mistrial should be considered fairly.

Amongst Plaintiff's rights are the right to file this motion, and to be treated with a degree of respect that is fair to the circumstances, and with the appearance of decorum, by the Court.

<u>MOTION FOR RECONSIDERATION:</u>

        **i.**      **Table of Authorities:**

1. Fed. R. Civ. P. 60(b)(1)
2. Fed. R. Civ. P. 6(b)(1)(B)
3. Other citations are listed on pages 14 through 18.

## I. Introduction:

Plaintiff filed an Amended Motion for a Mistrial. The presiding judge cites the wrong rule to pull a deadline from, and mistakenly contends that Plaintiff refused to clarify what Plaintiff meant by a particular statement, confusing that instance with another instance, for example, and makes numerous vague conclusory contentions, for the basis of her ruling.

The following was detailed in the motion, and is summarized in more depth in this motion than it is here in this introduction.

Plaintiff was unlawfully/improperly prohibited from presenting 95-98% of the evidence passing the FRE 401 test, at trial, despite the Court vetting about 40% as admissible during two days of pretrial conference. The Federal Rules of Evidence were blatantly disregarded. One example of evidence that was excluded (out of over a hundred) was the fact that Defendants hedged their bets that Plaintiff wouldn't get to Discovery, and lied consistently, including under oath, for over 3.5 years, contending the camera the incident occurred right under wasn't capable of recording. Plaintiff was prohibited from informing the jury about that, and over a hundred other pieces of evidence. Plaintiff's pretrial requests were ignored. Plaintiff stated during a pretrial hearing "Can we reference the rules?" and this request was ignored. Defendants unlawfully withheld the contact information for the percipient witness, and the trial judge was blatantly uncooperative during pretrial proceedings in general, and acted twice to cause the bystander to not make it to trial (firstly by requiring him to come in person without adequate conference, and secondly by refusing to cooperate with subpoenaing or ordering the witness to appear). The hearsay exceptions were completely disregarded. Defendants were allowed to change their story about a variety of issues at trial (and Plaintiff was prohibited from discussing their prior testimony, and the Court stopped Plaintiff's lines of questioning without legal basis). Defense Counsel, and Defendant Smith, and Andrew Cash were allowed make blatantly false, defamatory, irrelevant, and inadmissible remarks before the jury based on absolute hearsay that had never been disclosed. Plaintiff's citations of law were disregarded. It is not reasonably disputable that the evidence is in Plaintiff's favor. All of Plaintiff's motions have been disregarded (with the sole exception of Plaintiff's motion to strike Defendants' bill of costs,

1  which was "liberally construed" as an objection anyway).  Defense Counsel makes
2  approximately 50 conclusory lies per motion (and it is 5-10x more difficult for me to clarify the
3  truth about their lies, than it is for them to lie), and Plaintiff on the other hand can cite numerous
4  specific examples, provide proof in exhibits, and cite numerous supreme court case laws, rules,
5  and laws, and the Court simply repeats the conclusory lies made by Defense Counsel in her
6  rulings, and fails to read Plaintiff's motions.  Approximately 40-90% of Plaintiff's motions were
7  not even read, and the Court has retaliated against Plaintiff for simply filing proper motions after
8  nearly 2 years of completely baseless delay caused by Defendants by openly violating Plaintiff's
9  right to due process[1].  This is incredibly disrespectful of the 3-5+ years of sacrifice Plaintiff has
10 spent writing these motions, researching the laws, and consolidating and rewriting them, in good
11 faith, with the right to be heard fairly, in a court that treats both parties impartially, and acts with
12 decorum.
13       In sum, Plaintiff's constitutional right to due process has been overtly violated.

## II.     Reasonable Excise:

16     The court may "for good cause, extend the time…after the time has expired if the party
17  failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Second, Rule 60(b)(1)
18 provides for a party or their legal representative to obtain relief from an adverse judgment of a
19 <u>federal court for "mistake, inadvertence, surprise or excusable neglect." Fed. R. Civ. P. 60(b)(1).</u>
20       Footnote[1]: For example, when Plaintiff filed Plaintiff's first motion for sanctions, after a
21 motion to produce,  because of pervasive misconduct and refusing to comply with Discovery, the
22 Court arbitrarily denied both that motion, and Plaintiff's request for an extension on the time
23 limit that had been unlawfully imposed to fi le an amended complaint.  The motion to extend
24 said deadline had been resolved with Defendants after Plaintiff filed the motion, but without
25 reading either motion, or the non-objection, the Court denied both motions right off the bat at the
26 hearing without allowing oral argument either.  After hearing out Plaintiff after rejecting both
27 motions, the Court then stated "let me read the docket" and skimmed through the docket to
28 confirm that Plaintiff's statements of facts were true.

1. The Court picked the wrong rule of procedure to pick a deadline to assign for Plaintiff's Amended Motion for a Mistrial.  Plaintiff was acting in good faith.  There may not be any rule regarding a deadline to file an amended motion, particularly if there were numerous issues why refiling is warranted.  Missing any such deadline was inadvertent.  Plaintiff's motion was filed within a reasonable amount of time (within 29 or 30 days - depending on whether the day of the event triggering the deadline should be excluded or not).

2. My understanding was that court filings are ruled on with or without prejudice, and that if they are not ruled on with prejudice, then the party may refile.  In the new motion, Plaintiff addresses preliminary issues (such as not including an affidavit of misconduct and examples of bias by the Court directly effecting the trial) and assesses issues that were not brought up in the first motion because of good reasons (not criticizing the Court, and not repeating defamatory remarks regarding one's own party on the public record).  Furthermore numerous issues were not addressed which are summarized in Section III to avoid the Court having to re-read a full and complete motion).

3. Plaintiff lost access to Plaintiff's PACER account due to the new cognitive impairment from the incident that Plaintiff suffers from, that has been clearly documented in this case and medically.  Plaintiff forgot the password to both Plaintiff's email address, and the login information for Plaintiff's PACER account. Plaintiff was still logged into the email address on his phone, and was in the process of transferring services to a new email address, and wasn't aware that he had been logged out automatically on his phone (most likely due to an update).  Plaintiff was able to remember the login information for the PACER account after several days.  Plaintiff emailed PACER, and the Courtroom Deputy.  (Exhibit 1.)

4. Plaintiff was unaware that the Court had once again intervened in the normal judicial process and ruled against Plaintiff's Motion to Compel early (and still failed to read Plaintiff's motions for sanctions whatsoever, and failed to adequately read or acknowledge Plaintiff's Motion to Compel, and ruled in overt violation of the law regarding Plaintiff's Motion to Compel, and many other motions, in favor of Defendants which seems arbitrary).

5.     Plaintiff emailed / called / left voicemails for / left messages with receptionists for, the County Government / Office of Legal Counsel, including Joshua Myers (Defense Counsel's direct supervisor; messages which Mr. Myers stated (Exhibit 2) were forwarded to Defense Counsel), Robert Pittman (the appointed County Legal Counsel, and named representation in this case), several receptionists, and two different paralegals, primarily requesting that their response to Plaintiff's Amended Motion for a Mistrial be emailed, since Plaintiff never waived the right to be served documents (either by the Court, or by Defendants), had had trouble with being charged improperly by PACER 4 times, and was ignored (Exhibit 3).

6.     This is literally the first time Plaintiff would have not met a required deadline in this case or will have caused any delay (excluding the 2 times the Court instructed Plaintiff to file objections to Defendants' motions to dismiss the case, which I was not required to respond to, which had no basis in law, and which I was then forced to respond to again 5 times in addition to those 2 times), if such a deadline to refile an amended motion even exists, throughout over 3 years of federal litigation without help, throughout 2 floods, 2-3 fires, 2 evacuations, at least 1 week long power outage and several day long power outages right before deadlines (including this Monday), the worst Covid-related panic, medically documented disabilities, and adjusting to permanent cognitive impairment due to the incident, directly affecting Plaintiff, all during deadlines.  In contrast, Defendants caused 2 years of delay, and Plaintiff was required to respond seven times, over the course of over two years, to their baseless "time-barred" claim.

7.     Consideration should be made for the sheer quantity of misconduct that affected the trial and justified Plaintiff's motion for a mistrial which is described in the motion, which has been allowed to multiply the difficulty and workload of every new step anyone takes with every successive act of misconduct and overt negligence of responsibility.  Plaintiff has zero help because of the chilling effect the Court's practices of allowing Defendants in these categories of cases to unlawfully raise the cost of litigation and to violate the rules that all *other* lawyers are held accountable for adhering to, and because Plaintiff is being unreasonably and arbitrarily denied service by the Federal Pro Bono Project, and despite a promise from the trial judge, Plaintiff was not provided an advocate (See "Conspiracy" Section of Plaintiff's Amended Motion

for Mistrial), subjected to 5 months lost time before trial, and denied due process throughout litigation.

8. Consideration should be made for Plaintiff's pro se, IFP, and disability statuses,

9. The trial judge (a) improperly refused to forward the motion to recuse her to a different judge, (b) as per her custom and practice, failed to adequately read Plaintiff's original motion, and (c) makes numerous factual errors, and recitations of conclusory lies stated by Defense Counsel, in her order; which made amending the motion unnecessarily more difficult.

10. The delay is insignificant, and does not prejudice the opposing party any more than a timely filed Motion would whatsoever.

### III. Summary of Contents of the Second/Amended Motion for a Mistrial
### (And new issues since the Court's last two orders):

1. Plaintiff DID motion for a mistrial during the trial.  The trial judge responded "Lets see how this [the rest of the trial] goes", or something nearly verbatim.

2. During the hearing Mr. Alvarez stated perfectly clearly that Plaintiff was not resisting.  He saw the whole thing.[1] Defense Counsel badgered him until Plaintiff objected, and Mr. Alvarez refused to admit even that Plaintiff was "wiggling".  This completely impeaches Defendant's testimony and corroborates both Plaintiff's and Lt. Melissa Parmenter's testimony.

3. Rohnert Park redacted Mr. Alvarez's contact information, and told Plaintiff that no written witness statements existed.  They have openly violated various laws to obstruct Plaintiff from preserving the testimony of the arresting officer, who stated over the phone that Plaintiff was polite, cooperative, calm, and courteous, throughout the entirety of the arrest process.  The version of the same documents provided to Defendants were unredacted, but they were never forwarded to Plaintiff until pretrial.

---

[1]Alberto Alvarez was arrested for being in the parking lot.  On the videos released, he was thrown out of his car and onto the ground, and stated politely, "Can you please be careful of my glasses".

4.       Plaintiff was wrongly prohibited from calling witnesses[1], such as Plaintiff's psychologist, various witnesses from the County, etc., in overt violation of the Federal Rules of Evidence (see Section V of this Document).

[1]Plaintiff had full lists of witnesses in his initial disclosures, and the disclosures submitted at the end of Discovery.  Defendant badgered Plaintiff (and the pro bono lawyer) about "business associates" (which was being misconstrued by Defense Counsel), medical providers (Plaintiff had already provided what Plaintiff had, and medical evaluation was either not feasible under Plaintiff's insurance situation or delayed to the extreme because of Covid and other factors), and the physical locations of Plaintiff's family members (which Plaintiff objected to, conferred regarding without adequate reciprocation, and was ordered to provide, and timely complied with the judge's orders and the pro bono attorneys further instructions).  Upon continued badgering regarding this information, Plaintiff again provided Defense Counsel with new information that Plaintiff had (medical information, and witnesses who could attest to the fact that Plaintiff had been working on a video game, and had suffered damages to this loss). Defense Counsel then presented THAT list to the court as Plaintiff's witness list.

The Court has continuously allowed Defense Counsel to lie, and has continuously tried to take Defense Counsel's conclusory lies at face value - that is, as the unadulterated facts - even after Defense Counsel has been caught lying in literally every document he has filed, and at every hearing he has spoken for longer than 40 seconds at.  Plaintiff made a good faith effort to clarify all the misconduct, including the fact that the witness list provided by Defense Counsel was not Plaintiff's list of witnesses.

Plaintiff is pro se, and requires the Court's cooperation to subpoena witnesses.  The Court was uncooperative with this process (and all processes) throughout months of pretrial proceedings, the weeks before trial, and when the contact information for Mr. Alvarez was accidentally disclosed, after being unlawfully surreptitiously withheld for 3 years of federal "litigation" (The Court yelled "You don't run this court room!" at Plaintiff, with direct regard to the bystander witness's appearance at trial, and berated Plaintiff for about 20 minutes straight on two different occasions unreasonably).

     5.     Defendants lied under oath about the camera's ability to record.  Plaintiff was prohibited from sharing this with the jury.

     6.     Defendants destroyed the equipment list for the cameras that were installed during the incident in 2017 (Exhibit 4).  Plaintiff was prohibited from sharing this with the jury.

     7.     The trial was not bifurcated.  The trial judge herself stated openly that Plaintiff's cognitive impairment would harm his credibility with the jury, but allowed Defense Counsel to ask Plaintiff a "false dichotomy" in order to prejudice the jury against Plaintiff.  Avoiding this was the sole reason why Plaintiff requested bifurcation of the trial.  Further examples showing that the trial was not bifurcated were provided in the motion, such as that the Court instructed Plaintiff to show the jury pictures of the stand-up paddleboards Plaintiff had built.

     8.     Defense Counsel has weaponized Plaintiff's advocacy, constantly trying to paint Plaintiff as "uncooperative" - to corroborate their legal defense where they accuse Plaintiff of the same.  The Court also participated, yelling "What are you doing" at Plaintiff the first day of trial in a manner that sounded disgusted and out of patience in front of the jury, because Plaintiff took a moment to bring up references on his laptop while on the stand.  The Court acknowledges this in her order (Dkt. 231), stating in a conclusory fashion: "the jury saw how Plaintiff acted" (or something nearly verbatim) - apparently for being pro se and advocating well within the Rules, complying with Court's orders, and responding diligently to Defendants' requests.

     9.     The trial judge explicitly allowed Defense Counsel to state to the jury - while "questioning" Plaintiff - that Plaintiff was "on the run", got "picked up" on charges, "got in a fight with [his] sister over a knit cap", "broke down a door", "sued your landlord".  The falsity, inadmissibility, irrelevance and defamatory nature these false contentions was explained in detail in the motion.  Plaintiff had objected to this line of questioning and had been explicitly forced to answer these irrelevant, false accusations by the trial court.

     10.     The trial judge is in error regarding her contentions that Plaintiff was asked to clarify what Plaintiff meant by Plaintiff's statement that Plaintiff does not have criminal history.  Plaintiff was not asked to clarify that by anyone.  The Court stopped the trial, and assured Plaintiff that Defense Counsel would capitalize on that statement.

The trial judge is confusing that statement, with a question that Defense Counsel asked which Plaintiff objected to because it was irrelevant and prejudicial (and which the trial judge demonstrated she knew was prejudicial, when she said "We're not litigating THAT case", but ordered Plaintiff to answer anyway, despite Plaintiff objecting that it was irrelevant, and no relevance was explained by either Defense Counsel or the trial judge).

Plaintiff shouldn't have to restate defamatory remarks about Plaintiff made by Defense Counsel in violation of the Rules of Procedure, because it exacerbates the damages done to Plaintiff by the unlawful act of defamation. But the Court denies all (literally all) of Plaintiff motions arbitrarily, so Plaintiff has to choose between not specifically referencing the defamatory remarks (knowing that the Court heard them), filing a motion to file under seal and then have ALL Plaintiff's motions denied in a blanket and arbitrary manner (which happens regardless anyway), or being forced to repeat defamatory falsities regarding Plaintiff publicly because Plaintiff is being denied due process.

Nothing that Defense Counsel brought up constituted any criminal history. And again, Plaintiff DID NOT refuse to clarify what Plaintiff meant by this - the Court's statements are completely false. Plaintiff DID try to clarify to the jury the next day, after the Court promised Plaintiff that Defense Counsel would capitalize on Plaintiff's semantics.

11. There is only one single corroborative "piece of evidence" (loosely defined) that would corroborate Defendant's statement of facts if it were true, however it is belied by (a) Mr. Alvarez explicitly stating that Plaintiff was not in handcuffs when the other deputies arrived (over the phone / outside of court), (b) by the fact that Lieutenant Parmenter, the commanding officer, clearly admitted during the trial that her statement could have been due to the improper influence of Internal Affairs Lt. Andrew Cash surreptitiously instructing the Sheriff's Office employees to read the statements of the two deputies who assaulted Plaintiff prior to providing their own written statements, (3) the deliberateness with which the Sheriff's Office and County Legal Counsel have tried to hide the fact that Andrew Cash instructed the 4 non-Defendant Sheriff's Office employees to corroborate the written statements of the 2 employees who assaulted Plaintiff, and (4) the suspicious nature of the corroboration. Mr. Cash lied under oath

about interviewing the witnesses twice, when he stated he did not interview any of the 4 deputies, and Defense Counsel / the Sheriff's Office doctored the email conversation resulting in the written witness statements by the deputies released in Discovery, after stating to Plaintiff "There were six deputies; you were combative" (which was belied by Lt. Parmenter's statement that Plaintiff "was not resisting" (verbatim) in her written statement, and the undisputed fact there are no contentions that Plaintiff was "combative" by anyone, even Defendants.  (Plaintiff was either prohibited or obstructed from discussing the majority of evidence at the trial, and only given 5 minutes to question Mr. Cash, then Mr. Cash testified about irrelevant prejudicial matters (such as that I had tried to include him in the lawsuit, in an anachronistic manner) in response to my questions, and Defendants stated that Cash wouldn't appear.)

12. Plaintiff provided a list of approximately 35-40 different pieces of evidence that corroborated Plaintiff's statements of fact in the motions.  Some of these include whom the Court calls the "percipient witness" (whom Defense Counsel contends "saw nothing" and "wasn't there", verbatim), Lieutenant Melissa Parmenter's statement in her written witness statement to internal affairs that Plaintiff "was not resisting" (impeaching Defendant), that Alberto Alvarez saw the whole thing and also stated that Plaintiff was not resisting (impeaching Defendant), that the event occurred right under a camera (impeaching Defendant), that the camera was capable of recording (impeaching Defendants' statement in their answer to the complaint), and about 30-35 other examples.  "Preponderance of evidence" means a weight of the sum of evidence.  We don't need to speculate about how Defendants cheated the trial - it's on the record.  The trial judge is biased, and Defense Counsel capitalized on that to the fullest extent possible, committing pervasive blatant misconduct throughout litigation which had a monolithic effect on the trial.  Plaintiff provided a list of examples of misconduct committed and exemplification of bias by the trial judge in the amended motion for a mistrial (which *only* included misconduct that affected the trial, and excluded misconduct that only caused improper delay, improper refusal of aid during Discovery, and exorbitant extra workload over more than 3 years).

13. The trial judge opines that a medical diagnosis of "organic brain injury" "from the time of the incident" is not "probative" to whether a carotid hold was applied (it's not disputed

Page 10 of 18

Motion for Reconsideration                                                                                  4:19-cv-02252-YGR

1     that the carotid hold was applied).

2     The trial judge also opined that the testimony of Alberto Alvarez, who was the only
3     person whose contact information was ever released who witnessed the arm grab conducted by
4     Deputy Fazzio and the take-down until the arrival of the 4 other deputies, wasn't probative.

5     The trial judge's opinion on the matter of whether the neuropsychologist's report is
6     probative to whether the carotid hold caused damage is unqualified.  The neurologist,
7     neuropsychologist, and the expert on choke holds, think differently, and Plaintiff requests to
8     submit the reports of the expert on choke holds, and an expert neurologist, on this subject.  It is a
9     strong piece of cumulative organic evidence corroborating Plaintiff's statements of facts, which
10    also (like *all* the other even remotely reliable evidence) completely contradicts Defendants'
11    disputes of fact about the event that happened right under a camera where Defendants lied about
12    the camera's ability to record for over 3.5 years straight, including under oath and under penalty
13    of being charged with the federal crime of perjury.  But approximately 95-98% of the objective
14    evidence was improperly suppressed (with reference to the Federal Rules of Evidence, in the
15    motion), and Defendants were allowed to illegally slander Plaintiff before the jury.

16
17                    **IV.     The Equal Protection / "Monell" Claims:**

18    Defendants clearly implied consent to be retried on the Monell claim.

19    Plaintiff filed a claim against the County's distinct departments, and Defendant Smith in
20    his official capacity.  The claim was improperly pigeon-holed into a claim against Defendant
21    Smith in his individual capacity, over objections containing clear proof of contributing policies,
22    and clear authoritative citations of law.  Defense Counselor Kara Abelson quoted Plaintiff's
23    statement that Defendant Smith's actions "could not be in accordance with any reasonable
24    government policy" (or something very similar).  The Court ruled - in violation of the Supreme
25    Court's rulings in Willowbrook v. Olech, and the 9th Circuit's Ruling in Novarro v. Block, that
26    the County is allowed under the law to discriminate arbitrarily and without rational basis against
27    Plaintiff based on gender, perception of youth, and being naturally and generally soft-spoken -
28    and was quite clear about that specifically at a hearing, but dismissed the "Monell" claim (which

Defense Counselor Abelson had quoted from) without prejudice (The Court also allowed Defendants to unlawfully withhold and spoliate crucial evidence they are required to disclose outside of Discovery under public information laws including Gov. Code 6254, PC 832.7, and various other laws).  Then, literally because Defense Counsel had committed blatant misconduct during Discovery deliberately causing improper delay (and because Plaintiff filed a motion regarding it), the Court rejected Plaintiff's request for an extension of time to amend the complaint (during Discovery).  The Court also 'moved the goalpost', and arbitrarily changed the definition of the elements of a Monell claim (the two instances the definition was provided by the Court can be cited on request).  Then Plaintiff's filing privileges were revoked.

Then at trial, the Court allows Defendants' associates to come and ratify his actions without an investigation, exemplifying 'Monell' liability as a legal defense.  The Court ignored Plaintiff's Motion for Reconsideration regarding this subject prior to the trial.  Multiple examples were provided in the motion of Monell liability exemplified at trial as a legal defense for Defendant Smith, such as policy-maker James Naugle stating 3-4 times that the County did not train their employees on any other safety measures such as a time limit to apply the carotid hold for.

In contrast, Plaintiff was prohibited from bringing up anything to do with the customs and practices of Sonoma County at the trial - the fact that their policies specifically endorsed unconstitutional misconduct and wasn't fixed until 2018 was deemed too prejudicial against Defendant Smith in his individual capacity.  Defendants refused to comply with Plaintiff's interrogatory with regard to their customs and practices.  If it was irrelevant, why would they use arbitrary endorsement as an explicit legal defense at trial?  How could Defendant be found liable in his individual capacity if his actions are explicitly endorsed by policy?

This has been an ongoing issue which Plaintiff has made numerous attempts to address throughout litigation, and which was actively knowingly improperly obstructed.  It is not something that Plaintiff ignored or failed to foresee, but something that has been deliberately done, as a conspiracy to sabotage Plaintiff.  Omitting several events, Plaintiff's 14th amendment Equal Protection claims were dismissed improperly, Plaintiff's request for an extension of time

to amend the complaint was rejected in retaliation for Plaintiff filing a motion for sanctions, and Plaintiff's Motion for Reconsideration regarding these

issues before trial was completely ignored by the Court.

## V.      Hearsay Exceptions:

1.      The Court did explain the basics of the hearsay rule, which is totally different from the linguistic definition of hearsay - however the Court did not explain any exceptions.  In fact, it was Plaintiff who explained to the Court that "hearsay" (in this case, not linguistic hearsay, since it was said directly to Plaintiff) not being presented to prove the truth of an issue is admissible.  Despite that, the Court explicitly prohibited Plaintiff from discussing with the jury that Defendants and their associates had consistently lied including under oath about the camera, and consistently lied about it until they received a Discovery request, and then continued to lie regarding various details.

2.      Information on the following topics was improperly suppressed (according to the citations below in Section VI).  This list is not intended to be complete.

   a.      Information on the Carotid Hold;

   b.      Defense Counsel's Misconduct:

Defense Counsel has committed over a hundred separate instances of lies for improper legal advantage and misconduct.  These were supposed to all be admissible under the rules, but the trial judge wouldn't allow me to discuss it.

   c.      Plaintiff's character.

   d.      Overt perjury and various out-of-court lies made by public officials and associates/"agents" of Defendant, endorsed by Defendant, and in furtherance of conspiracy.

## V.      Hearsay Exceptions, Citations:

Some relevant hearsay exception are:

- Not being offered to prove the truth of the statement

- Statements "adopted" by Defendants

1          - Conspiratorial Statements -- every statement made in the course of the conspiracy to
2    deny me my rights were admissible hearsay.
3          *- Rule 807. Residual Exception:*
4          "(a) In General. Under the following conditions, a hearsay statement is not excluded by
5    the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule
6    803 or 804:
7          "(1) the statement is supported by sufficient guarantees of trustworthiness—after
8    considering the totality of circumstances under which it was made and evidence, if any,
9    corroborating the statement; and
10         "(2) it is more probative on the point for which it is offered than any other evidence that
11   the proponent can obtain through reasonable efforts.
12         "(b) Notice. The statement is admissible only if the proponent gives an adverse party
13   reasonable notice of the intent to offer the statement—including its substance and the declarant's
14   name— so that the party has a fair opportunity to meet it. The notice must be provided in writing
15   before the trial or hearing—or in any form during the trial or hearing if the court, for good cause,
16   excuses a lack of earlier notice."
17         *- Rule 801: Exclusions from Hearsay:*
18         "(d) Statements That Are Not Hearsay. A statement that meets the following conditions
19   is not hearsay:
20         "(1) A Declarant-Witness's Prior Statement. The declarant testifies and is subject to
21   cross-examination about a prior statement, and the statement:  (A) is inconsistent with the
22   declarant's testimony and was given under penalty of perjury at a trial, hearing, or other
23   proceeding or in a deposition;
24         "(2) An Opposing Party's Statement. The statement is offered against an opposing party
25   and: (A) was made by the party in an individual or representative capacity;  (B) is one the party
26   manifested that it adopted or believed to be true;  (C) was made by a person whom the party
27   authorized to make a statement on the subject;  (D) was made by the party's agent or employee
28   on a matter within the scope of that relationship and while it existed; or  (E) was made by the

1 party's coconspirator during and in furtherance of the conspiracy."

2      - *Rule 803. Exceptions to the Rule Against Hearsay:*

3      "(18) Statements in Learned Treatises, Periodicals, or Pamphlets. A statement contained
4 in a treatise, periodical, or pamphlet if:

5      "(A) the statement is called to the attention of an expert witness on cross-examination or
6 relied on by the expert on direct examination; and

7      "(B) the publication is established as a reliable authority by the expert's admission or
8 testimony, by another expert's testimony, or by judicial notice.

9      "If admitted, the statement may be read into evidence but not received as an exhibit."

10      - *Rule 804. Hearsay Exceptions; Declarant Unavailable*

11      "(a) Criteria for Being Unavailable. A declarant is considered to be unavailable as a
12 witness if the declarant:

13      "(3) testifies to not remembering the subject matter;

14      "(5) is absent from the trial or hearing and the statement's proponent has not been able,
15 by process or other reasonable means, to procure:

16      "(A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1)
17 or (6); or

18      "(B) the declarant's attendance or testimony, in the case of a hearsay exception under
19 Rule 804(b)(2), (3), or (4).

20      "(b) The Exceptions. The following are not excluded by the rule against hearsay if the
21 declarant is unavailable as a witness:

22      "(1) Former Testimony. Testimony that:

23      "(A) was given as a witness at a trial, hearing, or lawful deposition, whether given during
24 the current proceeding or a different one; and

25      "(B) is now offered against a party who had — or, in a civil case, whose predecessor in
26 interest had — an opportunity and similar motive to develop it by direct, cross-, or redirect
27 examination.

28      "(6) Statement Offered Against a Party That Wrongfully Caused the Declarant's

Unavailability. A statement offered against a party that wrongfully caused — or acquiesced in wrongfully causing— the declarant's unavailability as a witness, and did so intending that result."

## VII.    Other Citations:

1.   United States v. Agurs, 427 US 97 - Supreme Court 1976:

"'[W]hen error [such as non-disclosure of material evidence] is present in the record, the reviewing judge must set aside the verdict and judgment unless his "conviction is sure that the error did not influence the jury, or had but very slight effect.' Kotteakos v. United States, 328 U. S. 750, 764."  (Brackets within quote original.)

2.   West v. Goodyear Tire & Rubber Co., 167 F. 3d 776 - Court of Appeals, 2nd Circuit, 1999:

"It has long been the rule that spoliators should not benefit from their wrongdoing, as illustrated by 'that favourite maxim of the law, omnia presumuntur contra spoliatorem.' 1 Sir T. Willes Chitty, et al., Smith's Leading Cases 404 (13th ed. 1929); see Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998).

"See Kronisch, 150 F.3d at 126. The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.' Id.; see Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71 (2d Cir. 1988); 7 James Wm. Moore, Moore's Federal Practice § 37.50[1][a], at 37-72, 37-73 (1998); Jamie S. Gorelick et al., Destruction of Evidence § 3.14, at 111 (1989)."

3.   Rule 103. Rulings on Evidence:

(b)   "Not Needing to Renew an Objection or Offer of Proof. Once the court rules definitively on the record — either before or at trial — a party need not renew an objection or offer of proof to preserve a claim of error for appeal."

     (d)    "Preventing the Jury from Hearing Inadmissible Evidence. To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."

     4.    Rule 301. Presumptions in Civil Cases Generally

"In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally."

     5.    Rule 201. Judicial Notice of Adjudicative Facts:

     (e)    "Opportunity to Be Heard. On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard."

I was entitled to be heard regarding the validity of my equal protections claims, but my requests were ignored.

     6.    Rule 406. Habit; Routine Practice

"Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness."

     7.    Rule 608. A Witness's Character for Truthfulness or Untruthfulness:

     (a)    "Reputation or Opinion Evidence. A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked."

     (b)    "Specific Instances of Conduct. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-

examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

    (1)    "the witness; or

    (2)    "another witness whose character the witness being cross-examined has testified about.

"By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

    9.    Rule 614. Court's Calling or Examining a Witness:

    (a)    "Calling. The court may call a witness on its own or at a party's request. Each party is entitled to cross-examine the witness."

    (b)    "Examining. The court may examine a witness regardless of who calls the witness."

    10.    Section 455 provides that a federal judge "shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned".

### IX.  List of Exhibits Available on Request:

1. Emails regarding PACER to Counsel, PACER Staff, & Courtroom Deputy
2. Joshua Myers (supervisor) stating he forwarded emails to Defense Counsel
3. Emails explaining to Counsel Plaintiff was having issues with PACER
4. Defense Counsel's statement that the camera equipment list was destroyed

Thank you.

Respectfully Submitted,

Dated:  9/13/22                                      By: /s/Brian Best
                                                                     BRIAN BEST
                                                                     PLAINTIFF